MARGARET WELLS, *et al. vs.* HENRY KNIGHT.

JUNE 5, 1911.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Pleading. Writ in Case; Declaration in Trespass. Evidence. Blasting.*

In a writ and declaration the action was styled "an action of the case," and the declaration stated that it was the duty of the defendant "to exercise due proper and reasonable care in the control, management and operation" of his premises and in the blasting or quarrying of rock or stone and to give to travelers due proper and sufficient notice of such blasting so that they would not be injured.

The declaration alleged as to the wrongful act complained of; "that said (deceased) was in the exercise of due care and was driving a horse and wagon over said avenue and while driving as aforesaid and in the exercise of due care he was struck with a certain stone which was thrown by blasting from said ledge over said highway, which said blasting was done by said defend-

ant" etc. The declaration did not state whether or not the accident was due to negligence.

*Held,* that the declaration sounded in trespass, and such declaration founded on a writ sounding in case was permitted under C. P. A., § 246, so that the action was in form an action of trespass and not an action on the case'for negligence, and hence evidence offered in regard to the negligence of defendant in the matter of the use of explosives was strictly inadmissible, but being offered by plaintiff, he could not on exceptions to denial of a new trial by Superior Court, after verdict for defendant, object to its effect upon the jury.

*Held,* further that the effect of the charge to the jury was to eliminate any consideration of the general and conflicting testimony as to defendant's negligence in preparing and operating the blast, narrowing the case down to the question of the sufficiency of the warning given by defendant and the contributory negligence of deceased.

(2) *Trespass. Blasting. Use of Premises.*

Negligence need not be shown in order to recover for damage done by matter thrown from the premises of defendant by blasting, resulting in injury or death to a person traveling on a highway.

(3) *Contributory Negligence. Blasting. Trespass.*

Contributory negligence, is a bar to recovery in cases of this character as in other cases of personal injury or death.

(4) *Trespass. Blasting. Contributory Negligence.*

Defendant engaged in blasting upon his premises, sent an employee to warn travellers on the highway, to a point sufficiently far from the blast to be a safe place to wait until after the blasting was over.

There was ample evidence to warrant the jury in believing that full and explicit warning was given deceased and it being undisputed that he was in a safe place when the warning was given and voluntarily disregarded the warning and moved forward into a place of danger when he met his death, a verdict for defendant approved by the trial judge will not be disturbed.

ACTION OF THE CASE with declaration sounding in trespass. Heard on exceptions of plaintiff and overruled.

PARKHURST, J. This is an action of the case brought by Margaret A. Wells, of the city and county of Providence, State of Rhode Island, widow of Llewellyn Wells, late of said Providence, and Grace A., Elizabeth F. and Charles A. Wells, minor children of said Llewellyn Wells, by Margaret A. Wells, their next friend, against Henry Knight, of the town of Cranston, for damages under the statutes of the State of Rhode Island on account of the death of said Llewellyn Wells, caused by the

wrongful acts of the defendant, his servants and agents. (Gen. Laws, R. I. 1909, cap. 283, § 14.)

Llewellyn Wells on the 21st day of May, 1907, was driving on Scituate Avenue, in the town of Cranston, in a westerly direction on his way to Dugaway Hill, accompanied by James P. Ryan, of Providence. As they were driving along, when just west of Andrew McDonnell's house, which is on the north side of Scituate avenue, Mr. Wells was hit by a stone blown from a blast conducted by the defendant, Henry Knight, on the north side of Scituate avenue, about three hundred feet from the highway. Wells received injuries which rendered him unconscious and caused his death within a half an hour.

It appears that on the afternoon of May 21, 1907, the defendant had caused three holes to be drilled in a large rock, in the place aforesaid, of the depth of one and one-half feet, two feet and six feet, respectively, and the same to be charged with dynamite; that the blasts so prepared were ready to be fired between five thirty and six o'clock p. m.; that when these blasts were ready to be fired, the defendant sent Rowland R. Gardner, a man over sixty years old, employed by defendant, to the east of the ledge to notify travelers of the impending blasts, and also to inform the defendant, who had gone to the west for that purpose, when the road was clear, in order that he might give instructions to the men on the ledge when to fire the blasts.

Mr. Gardner proceeded on Scituate avenue to a point about 100 feet east of the easterly end of a stone wall, delineated on the plat on file, on the south side of Scituate Avenue, a distance of some 700 or more feet east of the blasts, at which point he signaled the defendant that it was safe to fire. The defendant then ordered the workmen on the ledge to fire; he also instantaneously shouted, "Fire, look out!" in a loud tone of voice; the men in charge of the blast also hollered "Fire, look out!" in a loud voice. This shouting was heard by two young girls on Scituate avenue about 1,000 feet east of the blasts. They also say that they informed the deceased and his companion, James P. Ryan, who were traveling in an open buggy in a west-

erly direction, of the danger ahead on the ledge; they also say
that these men looked at them, and continued to drive on until
they were stopped by Mr. Gardner some distance east of a
gateway leading into a place on the north side of Scituate ave-
nue, occupied at that time by Andrew McDonnell, whose dep-
osition is in the case.    When the deceased and his companion
reached Mr. Gardner, the latter says that he distinctly told them
that they were to stop as there were three blasts to be fired on
the ledge, pointing to it, and of which the deceased at that
point and for a considerable distance west of it had a clear and
unobstructed view.    About the time that Mr. Gardner warned
the deceased of the pending blasts, one of two Italian workmen
on their way home from work on a farm west of the defendant,
when he had passed to the east of the McDonnell gateway, and
opposite the point where Mr. Gardner stood, hearing the cries
of the men on the ledge of "Fire, look out!" as he testifies,
told Mr. Wells that there were five or six blasts to go off on the
ledge and to look out; Mr. Gardner, knowing that there were but
three, testifies that he corrected the Italian spokesman as to
the number that were to be fired.    Mr. Wells stopped his horse
and buggy, saw the first one fired, and saw how far the stones
came from it, then, disregarding all warnings as to further blast-
ing, started to drive to the west.    There was an interval between
the blasts, during which the defendant and his men on the ledge
again shouted, so as to be heard a considerable distance away,
"Fire, look out!"    Mr. Wells having started after the first
blast without having been told by Mr. Gardner that it was safe
to do so, the latter, seeing him driving to the west before the
last blast went off, testifies that he shouted to the deceased, to
hold up as there were two more blasts to go off; that the latter
paid no attention to Mr. Gardner, but continued to drive on,
and had traveled to a point a short distance west of the second
pole west of McDonnell's house, covering about 250 or 300 feet
from the point where Mr. Gardner stopped him and warned him
of the blasts, when the second blast went off, throwing a piece
of stone several pounds in weight, which the deceased saw as
it came toward him, and which struck him on the right side of

the body, causing him to exclaim in pain, attracting the attention of the Italian who had warned him, when the latter had traveled about 300 feet from the point where he had spoken to Mr. Wells; also attracting the notice of the defendant; of Mr. McDonnell who was in a hen coop some distance north of the location of the horse and buggy; of Mr. Gardner, and of Mr. Proffitt, a colored man who lived on the south side of Scituate avenue. All of these, excepting the Italian and Mr. Proffitt, ran to the relief of the injured man, and he was taken into the defendant's house where he died within twenty minutes.

The case was tried in the Superior Court, before a jury, October 14–27, 1909, and a verdict was rendered for the defendant. The plaintiff thereupon moved for a new trial upon the following grounds: "First: The verdict is against the law. Second: The verdict is against the evidence and the weight thereof. Third: The verdict is against the law and the evidence and the weight thereof. Fourth: The damages awarded in said cause were unjust and grossly excessive. Fifth: The plaintiffs have discovered new and material evidence which they had not discovered at the time of the trial of said cause and which they could not have discovered at said time by the exercise of reasonable care." The plaintiff's motion for a new trial was denied and the case is now before this court on the plaintiffs' bill of exceptions, based on the refusal of the judge below to grant a new trial, and also upon numerous exceptions taken at the trial to the judge's rulings in admitting and excluding testimony, and in charging and refusing to charge the jury as requested.

The first question raised by the plaintiffs in argument is whether the verdict for the defendant was against the evidence and the weight thereof. In discussing this question a large part of the argument on both sides has been addressed to the question of the admissibility, pertinency and relevancy of evidence offered by the plaintiffs, to show that the defendant was negligent in the method and manner of preparing and exploding the blasts, in that he used an excessive quantity of dynamite; and that he did not properly cover the rock when the blast was

set off so as to prevent the rock and debris from flying a long distance. The defendant objected to this evidence so offered by the plaintiffs on the ground that no allegations of such negligence appeared in the declaration and the same was therefore inadmissible.

(1)    In the writ and declaration in the case at bar the action is styled "an action of the case." The amended declaration says that it was the duty of the defendant "to exercise due, proper and reasonable care in the control, management and operation" of his premises and in the blasting or quarrying of rock or stone as aforesaid and to give to travelers due, proper and sufficient notice of such blasting so that they would not be injured.

The declaration alleges as to the wrongful act complained of: "and said plaintiffs aver that said Llewellyn Wells on, to wit, said 21st day of May, A. D. 1907, at said Cranston, was in the exercise of due care, and was driving in, to wit, a southerly direction a horse and wagon or vehicle over, across and upon said Scituate avenue, in said town of Cranston, and while driving or travelling as aforesaid, and while in the exercise of due care, said Llewellyn Wells was struck in the right side, chest, arm and body with a certain stone or rock which was thrown or blown by blasting or quarrying as aforesaid, from said ledge or quarry over, across and upon said highway, which said blasting or quarrying was done by said defendant, his agents and servants," etc. This then is the statement of the case upon which the plaintiffs must recover. The declaration states just how the accident happened. It does not state whether or not it was due to negligence.

It is plainly a declaration in trespass, alleging a direct and forcible trespass to the person, without any allegation of negligence on the part of the defendant. Such a declaration in trespass, founded on a writ sounding in case, is permitted by statute, § 246 C. P. A., as construed in *Adams* v. *Lorraine Mfg. Co.*, 29 R. I. 333; and we regard the action in form as an action of trespass, and not as an action of trespass on the case for negligence. It follows, therefore, that as there is no allegation of negligence, and the action is founded on a direct tres-

(2) pass to the person, the evidence offered in regard to the negligence of the defendant in the matter of the use of explosives and of the covering of the blast, was under strict rules, inadmissible. Furthermore, this court has recently approved the rule set forth in *Hickey* v. *McCabe & Bihler,* 30 R. I., 346, 348, that "It is well settled that negligence need not be shown in order to recover for damage done by matter thrown by blasting upon the adjoining land. The rule is stated in 19 Cyc. 7, as follows: ' It may be said to be the rule that one who in blasting upon his premises casts rocks or other debris upon the land of another is liable for such invasion regardless of the degree of care or skill used in doing the work.'" (Citing numerous cases). The case proceeds to discuss the application of the same rule to cases where the damage was caused by concussions and vibrations due to blasting, noting the conflict of authority, and concludes that the same rule should apply in both classes of cases; and that proof of negligence on the part of the defendant is not necessary in cases where the damage caused by blasting results from concussions and vibrations, any more than in cases where damage results from rocks or other debris cast upon the land. It may perhaps be fair to counsel in the case at bar to say, that the case of *Hickey* v. *McCabe & Bihler, supra,* was decided by this court March 4, 1910, after the trial of the case at bar (October, 1909), so that counsel and court in the case at bar did not have the advantage of the decision in the *Hickey* case in the trial of the case at bar.

And the rule of law is the same in cases of injury to the person as in case of damage to property. *Hoffman* v. *Walsh,* 117 Mo. App. 278; *St. Peter* v. *Denison,* 58 N. Y. 416; *Munro* v. *Dredging, etc., Co.* 84 Cal. 515 and cases *infra.*

So the same rules are applied in case of injury or death caused to a person traveling in a highway. 2 Shearm. & Red. on Neg. § 688a; *Sullivan* v. *Dunham,* 161 N. Y. 290, 294, 295, 299; *Wright* v. *Compton,* 53 Ind. 337, 341. In the case of *Sullivan* v. *Dunham, supra* (p. 292) the court said: "The main question presented by this appeal is whether one who for a lawful purpose and without negligence or want of skill, explodes a blast

upon his own land and thereby causes a piece of wood to fall upon a person lawfully traveling on a public highway, is liable for the injury thus inflicted." And the court (after stating the cases of *Hay* v. *Cohoes Co.* 2 N. Y. 159 and *Tremain* v. *Cohoes Co.*, 2 N. Y. 163) further says (p. 294): "These were cases of trespass upon lands, while the case before us involves trespass upon the person of a human being, when she was where she had the right of protection from injury the same as if she had been walking upon her own land. As the safety of a person is more sacred than the safety of property, the cases cited here govern our decision unless they are no longer the law." Again, on p. 295, after stating the case of *St. Peter* v. *Denison*, 58 N. Y. 416, where a man employed upon land of another as a workman was killed by a piece of frozen earth thrown by a blast set off by defendant, the court says: "This case is analogous to the one before us, because the person injured did not own the land upon which he stood when struck, but he had a right to stand there the same as the plaintiff's intestate had a right to walk in the highway. We see no distinction in principle between the two cases." Again, at p. 299, after reviewing a number of cases, the court proceeds: "We think that the *Hay* case has always been recognized by this court as a sound and valuable authority. After standing for fifty years as the law of the state upon the subject, it should not be disturbed, and we have no inclination to disturb it. It rests upon the principle, founded in public policy, that the safety of property generally is superior in right to a particular use of a single piece of property by its owner. It renders the enjoyment of all property more secure by preventing such a use of one piece by one man as may injure all his neighbors. It makes human life safer by tending to prevent a land owner from casting, either with or without negligence, a part of his land upon the person of one who is where he had a right to be. It so applies the maxim of *sic utere tuo* as to protect person and property from direct physical violence, which, although accidental, has the same effect as if it were intentional. It lessens the hardship of placing absolute liability upon the one who causes the injury. The accident in question was a mis-

fortune to the defendants, but it was a greater misfortune to the young woman who was killed. The safety of travellers upon the public highway is more important to the state than the improvement of one piece of property, by a special method, is to its owner. As was said by the Supreme Court of Indiana in following the *Hay* case: ' The public travel must not be endangered to accommodate the private rights of individuals.' (*Wright* v. *Compton*, 53 Ind. 337). We think the courts below were right in holding the defendants liable as trespassers, regardless of the care they may have used in doing the work. Their action was a direct invasion of the rights of the person injured, who was lawfully in a public highway, which was a safe place until they made it otherwise by throwing into it the section of a tree."

In *Wright* v. *Compton*, 53 Ind. 337, at p. 341, the court said: "The act charged against them (defendants) is, in itself unlawful, not the act of blasting and quarrying rock, but the act of casting fragments of rock upon the plaintiff, to his injury. When the act, in itself, is unlawful, it is immaterial whether it is done ignorantly, negligently or purposely, except in the measure of damages.

"Every person must so use his property, and exercise his rights, as not to injure the property or restrict the rights of others.

"In this case, the defendants could not lawfully so use their stone quarry as to embarrass the rights of travelers along the public highway. The public travel must not be endangered, to accommodate the private rights of an individual."

And after stating and quoting from *Hay* v. *Cohoes Co.*, *supra*, the court further says: "So, we think, in this case, if the defendants cannot work their stone quarry without endangering the safety of travellers on the public highway, they must abandon it, or answer in damages for the injuries thus done."

In view of the principles laid down in the above cases, of which we approve, and in view of the frame of the declaration in trespass without allegation of negligence, we think that the evidence offered by the plaintiffs as to the negligence

of the defendant regarding use of an excessive quantity of dynamite and the covering of the blast might well have been excluded, as inadmissible and immaterial.    But, in view of the fact that it was offered by the plaintiffs, they cannot now complain of its effect (if any, upon the jury); nor can the defendant complain because he has not brought the question before us upon exception; and for the further reason, that he has succeeded in obtaining a verdict.

Furthermore, the court below, after having given most of its charge to the jury, in which only a very general allusion is made to the testimony of the defendant and his experts and the testimony of the experts for the plaintiffs upon these questions of negligence, at the request of the plaintiffs' attorney, and almost at the conclusion of the charge, especially instructed the jury as follows:    "The plaintiffs sustain the burden of proving negligence on the part of the defendant by showing that a rock came over from a ledge operated by the defendant and struck the deceased while he was on a public highway and the burden is on the defendant then to show that he was not guilty of negligence, under all the circumstances."    It seems to us that this instruction, which was evidently drawn by the plaintiffs' attorney for the very purpose of eliminating from the case any consideration of the general and conflicting testimony as to the defendant's negligence in preparing and operating the blast, must have had that effect upon the minds of the jury; and that practically the only questions left for the jury to consider were whether the stone which killed the deceased actually came from the defendant's quarry and was thrown by the defendant's blast (as to which there was no dispute); and whether the defendant had given sufficient warning of the danger to the deceased, so that by reason of his disregard of the warning he was guilty of contributory negligence.    In other words, it seems to us, that this instruction narrowed the case, so far as the question of defendant's liability was concerned down to the single question of the sufficiency of the warning given by the defendant, and the contributory negligence of the deceased.

That this was the effect of the charge is rendered the more apparent when we consider that immediately after the instruction above quoted, the following instructions (also given at the plaintiffs' request, and relating solely to the questions of due care and warning) are given as the conclusion of the charge: "Llewellyn Wells was only obliged to use such care as ordinary men having his knowledge of blasting would ordinarily use under the circumstances considering the distance of the highway, the houses, the hen-coop, the barns and sheds and all other objects from the point of blasting.

"The deceased might reasonably have anticipated that a stone from the blast would not go farther than common experience shows that it is apt to go." And the court finally concludes, in his own language, as follows: "Of course if there was no warning that it was dangerous to proceed along the highway, the deceased had a right to go ahead, believing that a stone wouldn't come over upon the highway, unless he was expressly warned to that effect. It is for you to say what the warning was and whether or not it was sufficient."

(4)     We come then to the question of contributory negligence. A careful consideration of the testimony convinces us that upon this ground the jury was justified in finding a verdict for the defendant. It is undisputed that the defendant sent his employee, Mr. Gardner, expressly for the purpose of warning travelers upon the highway, to a point sufficiently far from the blast to be a safe place to wait till after the blasting was over; and that Gardner did warn the deceased and his companion Ryan at that point to stop, because of the danger. And although there is some conflict as to whether Mr. Gardner told the deceased and Ryan that there was to be more than one blast, there was ample evidence to corroborate Mr. Gardner's statement that he expressly said to them that three blasts were to be fired; and there is ample evidence that there were warnings given by the men on the ledge and others in the hearing of the deceased and Ryan, and heard by others much farther away than the deceased, that there were other blasts to follow the one already fired, while the deceased was waiting in his buggy

at the place where he was first stopped by Gardner; a number of witnesses, eight or more, testify in various ways and to various facts and circumstances regarding the warnings, some directly corroborating Gardner's statement as to his direct warning of three blasts to be fired, others as to the warnings given by the men at the ledge. As there was ample evidence to warrant the jury in believing that full and explicit warning of the danger was given to the deceased, and it is undisputed that he was in a safe place when the warning was given, and voluntarily disregarded the warning and moved forward into a place of danger when he met his death, and as the judge who has tried the case has approved the verdict of the jury, we find no ground for setting the verdict aside. (*Wilcox* v. *R. I. Co.* 29 R. I. 292.)

(3) It is not disputed, in this case, as we understand, that contributory negligence, if proved, is as much a bar to recovery, in cases of this character, as in other cases of personal injury or death. *Wright* v. *Compton*, 53 Ind. 337; *Sullivan* v. *Dunham*, 10 App. Div. (N. Y.) 438; 19 Cyc. p. 10. Shearm. & Red. Vol. 2, p. 1188–1190; Am. & Eng. Ency. Laws, 2nd. Ed. vol. 12, p. 510; *Smith* v. *Day*, 86 Fed. Rep. 62; *Wadsworth* v. *Marshall*, 88 Me. 263; *Cary Bros & Hannon* v. *Morrison*, 129 Fed. R. 177.

The ground of newly discovered evidence claimed in the plaintiffs' motion for a new trial is not supported by any sufficient affidavits and is not pressed.

The exceptions based upon the denial of the plaintiffs' motion for a new trial on the ground that the verdict was against the law and against the evidence and the weight thereof, (being Plaintiffs' Exceptions Nos. 46–50 inclusive) for reasons above and hereinafter set forth are overruled.

As to the plaintiffs' other specific exceptions (numbered 1–45 inclusive), we find that counsel rely only upon those numbered 1–3 and 6–17 inclusive, and 25–45 inclusive; and that exceptions numbered 4, 5, and 18–24 inclusive are abandoned. All of the exceptions urged and relied upon, Nos. 1–17, relate to rulings admitting or refusing to admit testimony, or to

remarks of defendant's attorney in relation to questions asked. We do not find in any of these exceptions anything worthy of extended comment. We find that most of the questions ruled out, were quite immaterial; that defendant's attorney said nothing which could in any way have prompted the witness or prejudiced the jury in favor of the defendant; and the plaintiffs' attorney was allowed in each instance to get from the witness all of the material testimony which the witness was capable of giving. Exceptions Nos. 1–24 relating to the admission and exclusion of testimony are therefore overruled.

As to the plaintiffs' exceptions Nos. 25–45 inclusive, Nos. 25–34 inclusive relate to error claimed to have been made by the court in giving instructions to the jury as requested by defendant's attorney. A careful consideration of the instructions so given, in connection with the evidence in the case, and as modified by the court, shows that they were all fully warranted by the evidence; that they all related to the question of the warning given by the defendant to the deceased, and the question of the due care required of the deceased under the circumstances, and to the effect of want of due care on the part of the deceased as to the right of his widow and children to recover in this case; we find no error in the instructions as modified by the court, and that the same were correct; and we find that a review of them at length is unnecessary and would unduly lengthen the opinion. Exceptions Nos. 25–34 inclusive are therefore overruled.

Exceptions Nos. 35–45, inclusive, relate to the refusal of the court to charge as specially requested by the plaintiffs' attorney. Some of the instructions requested had already been covered by the charge as given; some of them were clearly irrelevant and untenable, and would have been error, if given as requested; we find no error in the refusals. These exceptions are therefore overruled.

The plaintiffs' exceptions are all overruled and the case is remitted to the Superior Court with direction to enter its judgment for the defendant upon the verdict as rendered by the jury.

*Waterman, Curran & Hunt,* for plaintiffs.

*Cooney & Cahill,* for defendant.