# Louisville & Nashville Railroad Company v. Smith's Administrator.

(Decided October 9, 1923).

## Appeal from Warren Circuit Court.

1. Explosives—Care Required in Use.—Greater care must be exercised by those who employ explosives than is required in the use of less dangerous forces.

2. Explosives—Injuries to Traveller on Highway Actionabe, Regardless of Negligence.—One who explodes blasts upon his own land, and thereby causes a piece of the blasted substance to fall upon a person lawfully traveling in the public highway, is liable as a trespasser for the injury thus inflicted, although the blast is fired for a lawful purpose and without neglegence or want of skill, and this applies where a railroad blasting a broken bridge kills an onlooker.

3. Death—Evidence Held Admissible to Show Cause of Death.—In an action for death, evidence of a physician as to injuries on the body of deceased, while not especially relevant, was permissible to give the jury an idea of what caused the death, it being necessary to show that the missile which took life came from defendant's blasting.

4. Explosives—Finding Blasting Set Objects in Motion Warranted.—In an action for death caused by blasting held that the jury was warranted in concluding that defendant's blasting set the objects in motion which killed plaintiff's intestate.

5. Appeal and Error—Admission of Evidence Held Harmless.—In action for death caused by blasting, testimony of physician as to injuries to the body of deceased, if irrelevant, held at least ·harmless.

6. Death—Evidence Decedent was Single Man Improper.—In action for death, it was not proper or pertinent to prove that decedent was a single man, or to prove that his father and mother were living.

7. Appeal and Error—Admission of Evidence Held Not Prejudicial.—In action for death, proof that decedent was a single man and that his father and mother were living was not prejudicial.

8. Appeal and Error—Failure to Strike Averment from Petition Held Not Prejudicial.—In an action for death, refusal of the court to strike from the petition the averment that deceased was unmarried, and left surviving him as his only heirs at law a father and mother; did not prejudice the substantial rights of the defendant.

9. Appeal and Error—Admission of Res Gestae Matter Held Harmless.—In action for death to an onlooker when a railroad was blasting broken bridge off supports, evidence as to what the superintendent of railroads said, immediately after the injury of deceased, concerning what methods had been considered for the removal of the bridge, if not admissible as a part of the res

gestae, was not prejudicial, where it was shown in evidence that defendant did employ acetylene gas to burn the bridge from its supports, after it failed to move it with dynamite.

10. Death—$15,000.00 Held Not Excessive.—$15,000.00 was not excessive for the death of a young man 27 years of age in vigorous health, who was earning about $300.00 a month.

11. Explosives—Instruction Held Correct.—In an action for death of an onlooker from a blast by a railroad to remove broken bridge from its supports, an instruction that if the jury believed from the evidence that at the time of the discharge of the explosive defendant knew or had opportunity through its agents to have known that the deceased and others were assembled nearby on a highway, and with this knowledge negligently discharged the explosives, and thereby caused a piece of iron to be thrown through the air and to strike decedent, to find a verdict for the plaintiff, held substantially correct.

12. Appeal and Error—No Complaint of Failure to Instruct in Absence of Offer.—A failure on the part of appellant's counsel to offer an instruction on the legal effect of notice given a crowd, including decedent, that workmen were preparing to touch off a blast, precludes it from complaining on appeal of the failure of the court to give an instruction as to such notice.

B. D. WARFIELD and JOHN B. RODES for appellant.

THOMAS, THOMAS & LOGAN and G. D. MILLIKEN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—Affirming.

A wreck of a freight train on appellant Louisville & Nashville Railroad Company's line, crossing Barren river in Warren county, demolished one span of a ·steel bridge. To remove the train wreck as well as the hanging parts of the bridge from the piers the employes of the company placed dynamite under one end of the wrecked bridge for the purpose of blasting it off the abutment into Barren river so that a new structure might be erected in the place of the old one and train operation be resumed. The wreck occurred in the suburbs of the city of Bowling Green. It attracted a great deal of attention and when it became noised about the city that the company intended to dynamite the bridge off the abutment and allow it to fall into the river, a great crowd of people gathered to witness the sight. Appellant's employes were at work cleaning up the wreckage. In order to keep the people back they stretched a wire around the place where they worked. Later as the crowd grew larger they ordered the people back and put up a rope ranging from 180 feet to 200 feet from the bridge, and directed all persons, except employees, to stay on the outside of

that rope. When the dynamite was placed under the end of the bridge some one shouted, "Lookout, they are going to fire a shot," whereupon everyone fixed his eyes upon the bridge. Two explosions occurred. The first one, a small shot, seemed to have little effect upon the bridge, but the second shot, a much louder and more powerful one, moved the bridge somewhat and tore from it small pieces of steel which were thrown through the air, one striking a Mr. Cromwell and tearing off the top of his head, and the other striking appellee's decedent, Guy W. Smith, and producing a large wound in his body from which he in two days thereafter died. It is to recover damages for the wrongful death of Smith that this suit was instituted and is now being prosecuted.

A verdict was returned by the jury in favor of the administrator of Smith for the sum of $15,000.00 and the railroad company appeals. It insists:

(1) That there was no evidence showing it was negligent or that decedent's death was otherwise than accidental; in fact, appellant took greater care than the law required of it on that occasion; that the case is one for the application of the doctrine of *volenti non fit injuria*, and there should have been a peremptory instruction for appellant.

(2) The court admitted very incompetent evidence for the administrator.

(3) The damages are excessive.

(4) The instructions are radically erroneous.

We cannot agree with counsel for appellant that the death of Smith was not the result of its negligence. The railroad company did not take greater care than the law required of it on that occasion; nor do we think that the doctrine expressed in the Latin maxim above quoted has application to this case. The law governing the use of explosives is well established. Like other dangerous instrumentalities, greater care must be exercised by those who employ them than is required in the use of less dangerous and better known and understood forces. The decided weight of authority, says 11 R. C. L., page 673, supports the view that where one explodes blasts on his own lands, thereby throwing rock, earth or *debris* on the premises of his neighbor, commits a trespass and is answerable for the damage caused, irrespective of whether the blasting is negligently done. This rule is not restricted to liability for injury to the lands or improvements of an adjoining owner. As the safety of persons is

more sacred than the safety of property, the liability extends to personal injuries inflicted on such adjoining owner or on anyone who is lawfully upon his premises. The rule extends, moreover, to injuries inflicted upon persons traveling upon the public highway.   Hence it is that one who explodes blasts upon his own land and thereby causes a piece of the blasted substances to fall upon a person lawfully traveling on a public highway, is liable as a trespasser for the injury thus inflicted, although the blast is fired for a lawful purpose and without negligence or want of skill.   The text is supported by much authority.

In the case of Alleghany Coke Company v. Massey, reported in 163 Ky. 795, we said, in discussing the rights of persons engaged in making excavations by blasting:

"Here the blasting was done in such close proximity to plaintiff's residence and other adjoining residences, with knowledge of the fact that these residences were occupied, that a rock from one of the blasts was thrown into plaintiff's residence and caused the injury.   The fact that plaintiff's father was an employe of the coke company and rented the premises in question in no way affects the case.   It was plaintiff's home and his rights are the same as if the property had been owned by his father.   As we view it, the sanctity with which the common law invests one's home is not confined merely to the property itself.   We are not, therefore, disposed to take the narrow view that for trespasses resulting in injuries to one's property a recovery can be had, but no liability attaches where the trespass results in injury to one's person."

See also Sullivan v. Dunham, 47 L. R. A. 715; Baker v. Hagley, 55 Am. St. Reports, 712, and note.

We believe the generally accepted rule to be that one who sets off or explodes dynamite, powder or other inherently dangerous substances on his own land or right of way and thereby throws rock, earth, *debris* or other substances on to the premises of his neighbor is guilty of a trespass for which he is answerable in damages irrespective of whether the blasting was done prudently or negligently.   It would seem that the safety of persons is much more sacred than the safety of property, and that one using explosives should be held to a stricter observance of the rule and required to respond in damages for personal injuries thus inflicted without regard to the

care with which the exploder handles and sets off the blasts.

Nor is one beyond the pale of the law in such case when he is off his own premises and a licensee or trespasser if his presence and danger be known to the one about to use the explosives.

The deceased Smith, with several hundred other people, was merely watching the workmen in their efforts to throw the bridge from the piers into the river. He was not a trespasser for he was in a public street of the city of Bowling Green and beyond the rope drawn around the bridge by the servants of appellant company and at a place where he had reason to believe he was safe and where the employes of appellant company about to use the dynamite directed him to be and remain.

When the employes of the railroad company put up the rope or wire around the place where the blasts were about to be set off, and directed the crowd, including Smith, the deceased, to stand back of the line, it impliedly assured the crowd, including Smith, that the territory beyond the wire was safe for them to occupy when the blasts were set off, and the crowd, including Smith, had a right to rely upon such implied assurance of safety and to keep in the space outside such danger zone as fixed by the rope or wire.    The crowd also had a right to assume that the employes of the railroad company in charge of the blasting understood the nature and danger of the business in which they were engaged and especially with respect to the character of explosives they were employing and the extent of the area made dangerous by the setting off of such explosives.    The crowd, even though merely idle curiosity seekers, had not voluntarily surrendered their rights to life by remaining and looking on.    Had they been trespassers the railroad company could not have justified the killing of any one or more of them through the setting off of blasts even though done in a careful manner, for, the presence of the crowd was well known to the employes of the company.    The well recognized and thoroughly established rule is that one may not employ dangerous explosives to advance his work in a thickly populated community even though he is guilty of no negligence, without assuming responsibility for all damage to persons or property resulting from the use of the same.    The reason which supports such a rule is much more applicable to a case like the one we have under consideration where the crowd is gathered nearby

and can be seen and their presence and danger known to those employing the explosives. To set off a high explosive near a large crowd of people is little less than murder. Without going into a full discussion of all the phases of this case we will content ourselves by restating the proposition that the decedent Smith and the balance of the crowd gathered near the bridge, but outside the rope put up by the employes of the appellant company, were justified in assuming that the rope circumscribed the danger zone and that it was safe for them to stand on the outside of the circle and watch the workmen and the results of the explosives.

The use of the dynamite was but one method of lifting the bridge from the pier. A safer and better method could have been employed and indeed was later employed by appellant company and its servants in removing the bridge from the pier after the dynamite had failed to accomplish that purpose. In placing the dynamite to lift the bridge from the pier the railroad company assumed all risks of danger resulting from trespasses inflicted by the explosives scattering metal and other substances through the air. The decedent was at a place he had a right to be, although he had no special business there other than as an onlooker. It follows that the railroad company is responsible for the destruction of his power to earn money resulting from the wrongful trespass committed by it against him.

2. It is next insisted that the trial court admitted very incompetent evidence for the administrator over the objection of the appellant. The first complaint under this head is with respect to the testimony of Dr. Blackburn, who was permitted to briefly tell about the injuries on the body of deceased. This evidence while not especially relevant was permissible to give the jury an idea of what caused the death. It was necessary to show that the missile which took his life came from the blasting, and as no one could see the missile passing through the air, it was not at all improper to allow the witness to tell what substance it was which struck the deceased and caused his injury. As it was a piece of steel or iron broken from the tow of the bridge, the jury was warranted in concluding that the blasting set the objects in motion since the fragment struck and injured him at the instant the explosion occurred. We do not hold that in an action for wrongful death where the defendant admits the death, evidence of wounds and of suffering are compe-

tent, but the circumstances of this case, it seems to us, render the evidence given by Dr. Blackburn with respect to the wound at least harmless, even though irrelevant.

Neither was it proper or pertinent to prove that decedent was a single man or to prove that his father and mother were living, but this evidence was not prejudicial. The court might well have sustained the motion of appellant to strike from the petition the averment that the deceased was unmarried and left surviving him as his only heirs at law, a father and mother, but his failure to sustain that motion did not prejudice the substantial rights of appellant. Another insistence of appellant under this same head is the wrongful admission of the evidence of Oscar Keller as to what Mr. Sheridan, the superintendent of the company, said immediately after the injury of deceased concerning what methods had been considered for the removal of the bridge from the pier. The conversation which Keller related between him and the superintendent appears to have occurred immediately after the happening of the accident and might properly be classed as a part of the res gestae; but whether it was or not what was said could not have been prejudicial in view of the fact that it is shown in the evidence that the appellant company did employ acetylene gas to burn the bridge from the piers after it failed to move it with dynamite. These scraps of conversation might well have been excluded, but being in the record they appear harmless.

Appellant also complains that the damages awarded the administrator are excessive. Decedent was a young man about 27 years of age, in vigorous health. His expectancy, according to recognized tables of mortality, was something more than 30 years. He was earning about $300.00 per month. These facts alone are sufficient to refute the argument concerning the excessiveness of the verdict.

The last contention of appellant is that the instructions given by the court to the jury are erroneous. With this contention we cannot agree. The court told the jury in substance that if it believed from the evidence that at the time and place described by the witnesses the defendant used a high explosive to remove a part of the bridge from its moorings by blasting or discharging said explosives, and should further believe from the evidence that at the time of the discharge of the explosives the defendant knew, or had opportunity through its

agents to have known, that the deceased Smith and others were assembled nearby on a highway and with this knowledge or opportunity of knowledge negligently discharged the explosives on the bridge and thereby caused a piece of iron to be thrown through the air and to strike Smith, thereby injuring him and causing his death, to find a verdict for the plaintiff, administrator of Smith.

The next instruction was a correct measure of damages.

The third instruction defined negligence and ordinary care.

The fourth instruction presented the law of contributory negligence; and

The fifth instruction told the jury that nine or more of their number agreeing could return a verdict.

We think the instructions were substantially correct. Appellant argues, however, that the instructions were faulty because they wholly neglected the legal effect of the notice that was given the crowd, including decedent, by the rope, the warnings of danger and the request made by servants of appellant to stand further back, and the warnings afforded the sightseers by their own eyes that the workmen at the bridge were preparing to touch off the blast. In answer to this it may be said that appellant offered no instructions whatever, and if entitled to an instruction upon this phase of the case it was the duty of counsel for appellant to have presented such an instruction to the court and asked that it be given. A failure on the part of appellant's counsel to offer such an instruction precludes it from now complaining of the failure of the court to give the whole law of the case. Louisville, Henderson & St. Louis R. R. Co. v. Roberts, 144 Ky. 820.

We find no error to the prejudice of the substantial rights of appellant and the judgment must be affirmed.

Judgment affirmed.