## EXNER et ux. v. SHERMAN POWER CONST. CO.

### No. 45.

Circuit Court of Appeals, Second Circuit.
Dec. 14, 1931.

Warren R. Austin, of Burlington, Vt., and Homer L. Skeels, of Montpelier, Vt., for appellant.

C. Menzies Miller, Frank E. Barber, and Ernest W. Gibson, Jr., all of Brattleboro, Vt., for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an action in tort, brought by Delia H. Exner to recover damages to her person, property, and business which were caused by the explosion of dynamite kept by the defendant company in connection with work upon a hydroelectric development at Bellows Falls, Vt., in which it was engaged. The plaintiff Frederick Exner, the husband

of Delia H. Exner, was joined as a plaintiff because he sought to recover damages for injuries to his marital rights.

The defendant kept dynamite in a small hut on the westerly bank of the Connecticut river located conveniently to its work. This hut was approximately 935 feet from the dwelling of the plaintiffs, in which they rented rooms and apartments and carried on a restaurant and lunchroom. The dynamite hut was located close to a thickly settled part of Bellows Falls, and within fifty rods of five dwelling houses, a hotel, several factories, and business buildings belonging to persons other than the plaintiffs.

Mildred Wolfel, one of defendant's witnesses, who observed the explosion from the New Hampshire side of the river, 300 or 400 feet from where it occurred, said that she saw two men coming out of the dynamite hut carrying boxes; that she saw a flash and a ball of fire and then another flash, and experienced an explosion so severe as to throw her across the road. The hut was blown to atoms by the explosions, and three men engaged in getting the cases of dynamite to take down to the place along the river where the blasting was to be done were killed.

There was evidence that Mrs. Exner, the plaintiff, who was in bed in her house at the time of the explosion, was thrown out of bed and received injuries, that her house was so badly shattered as to require extensive repairs, and that her business was damaged. The accident occurred on February 18, 1928.

The principal storehouse of the dynamite was on the eastern or New Hampshire side of the river. From that, dynamite was brought in an automobile across the bridge and placed in the hut to be warmed so as to be in condition for use when needed for blasting. Evidence was introduced that twenty cases of dynamite, weighing fifty pounds each, were sent from the storehouse across the river to the hut the day before the explosion, and that three such cases were still on hand in the hut before the additional twenty cases were brought to it. The morning of the explosion, an order had been given to send fourteen boxes across the river to the hut, but they had not been taken over prior to the explosion. There was evidence that after the explosion one of the witnesses picked up as much as two fifty-pound cases of unexploded dynamite at the scene of the explosion and found four or five more in a tool box thirty to fifty feet from the hut. The general foreman of the de-

fendant testified that about one thousand pounds of dynamite were ordinarily required for daily use in blasting, but on some days when the company was not doing much drilling much less than one thousand pounds would be used.

The defendant's president testified that there was no place where the dynamite hut could be located that would be accessible to the work that would not be within fifty rods from an inhabited dwelling, and, if it had been placed beyond that limit, the dynamite would necessarily have been too cold for use before it reached the job and would have been carried more frequently than was the case through the streets of Bellows Falls, to the greater peril of the inhabitants. He also said that the hut was adopted as a place to store a supply of dynamite for daily use after a hearing before the deputy fire marshal of the state, and with his consent.

There is a statute of Vermont (Rev. Laws 1880, § 4323 [now G. L. 7109]), the consideration of which is involved in this case, which reads as follows:

*"Keeping Explosives.* A person who keeps or suffers to be kept upon premises owned or occupied by him, within fifty rods of an inhabited building of another person, more than fifty pounds of gunpowder or nitroglycerine at one time, or more than one pound, unless contained in sound canisters of tin or other metal, or a package containing more than fifty pounds of dynamite, shall be fined twenty-five dollars, and twenty-five dollars additional for each day that it is so kept after notice from an inhabitant of such town to remove the same."

Section 13 of No. 147 of the Acts of the Vermont Legislature of 1919 also provides:

*"Sec. 13. Conditions of Fire Hazard; Orders by Fire Marshal.* Whenever the state fire marshal or deputy fire marshal, or either of them, find any building or structure, which, for want of repair or by reason of age or dilapidated condition, or for any other cause is especially liable to fire, and which is so situated as to endanger other buildings and property, and whenever they, or either of them, find in any building or upon any premises, any combustible or explosive material, or conditions dangerous to the safety of said building or premises, they shall have power to make reasonable orders for the repair of said building or buildings and the removal of said combustible or explosive material, and the remedying of any dangerous conditions, and such order shall be forthwith complied with by the owners or occupants of

said premises or buildings. Provided, however, that a municipality that has building inspection and fire limits ordinances, nothing herein shall be construed to affect such local regulation, but the jurisdiction of the state fire marshal shall in such case be concurrent with that of the municipal authorities."

The plaintiff's declaration, as amended, contained four counts, under each of which an amount of dynamite in excess of fifty pounds was alleged to have been kept at the place of the explosion and within fifty rods of a building inhabited by another than the defendant:

(1) Alleging a violation of section 4323 of the Revised Laws of the state of Vermont.

(2) Alleging a violation of regulations of the state fire marshal.

(3) Alleging the negligence of the defendant in the handling, storing, and keeping of dynamite.

(4) Alleging excessive and heavy blasting operations by the defendant.

While not one of the counts was formally dismissed, the court, in its charge, disregarded everything except violation of section 4323 of the Vermont Revised Laws and held that there was an absolute liability for the damage if the jury found that section 4323 was transgressed by keeping more than one fifty-pound package of dynamite in or about the dynamite hut and within fifty rods of an inhabited building of a person other than the defendant.

Upon the case as submitted to the jury we must determine whether, under section 4323, or under the common law, the defendant became liable, irrespective of any fault, for the damage arising from the explosion.

The defendant was not, in our opinion, liable to the plaintiffs for a violation of section 4323. It is well established that only members of a class to be benefited can invoke a civil remedy by reason of such a statute as we have here. Molin v. Wisconsin Land & Lumber Co., 177 Mich. 524, 143 N. W. 624, 48 L. R. A. (N. S.) 876; Kinney v. Koopman, 116 Ala. 310, 22 So. 593, 37 L. R. A. 497, 67 Am. St. Rep. 119; Ives v. Welden, 114 Iowa, 476, 87 N. W. 408, 54 L. R. A. 854, 89 Am. St. Rep. 379. The plaintiffs inhabited a dwelling more than fifty rods from the dynamite hut, and the act in terms covers only an area within a radius of fifty rods from the place of storage. If there had been no inhabited dwellings within that zone, the plaintiffs would have incurred

the same risk as in the present case and would have suffered the same damage from the explosion, yet ex hypothesi the statute would not have been violated. It is impossible to see how the plaintiffs were of the class intended to be benefited by a law forbidding storage of dynamite within an area in which they were not included. It is true that the act contained a provision for fines for continued violation, after notice from an inhabitant of the town to remove the dynamite. But that clause was intended only to afford ample means for informing the storer of the dynamite of his violation of law and to enable inhabitants of the town outside the forbidden area, even busybodies, to benefit those within it by setting penalties in motion. We see no reason to suppose that a general interest in having laws observed or in helping people within the zone extended the protection of the statute to all inhabitants of the town. The plaintiffs were not of the class to be benefited. Any reasoning which would embrace them would be applicable even if they had lived in a corner of the town five miles away.

In Laflin & Rand Powder Co. v. Tearney, 131 Ill. 322, 23 N. E. 389, 7 L. R. A. 262, 19 Am. St. Rep. 34, where a statute forbidding the storage of dynamite within twenty rods of the boundary of defendant's land was violated, the plaintiff was allowed to recover though she did not show she was within twenty rods of the place of storage. If this holding is to be taken as contrary to the views which we have expressed, we are compelled to disagree with it. For a full statement of the facts in the Laflin & Rand Powder Co. decision, see the original opinion reported in 21 N. E. 516.

The question remains whether there was an absolute liability for the damage caused by the explosion at common law. We may say at the outset that we have been referred to nothing relevant as to this in the Vermont decisions, but they would not control in any event, because the matter is one in which we are at liberty to gather the principle to be applied from the general field of jurisprudence. Cole v. Pennsylvania R. Co. (C. C. A.) 43 F.(2d) 953, 71 A. L. R. 1096; National Metal Edge Box Co. v. Agostini (C. C. A.) 258 F. 109, and cases cited.

Dynamite is of the class of elements which one who stores or uses in such a locality, or under such circumstances as to cause likelihood of risk to others, stores or uses at his peril. He is an insurer, and is absolutely liable if damage results to third

persons, either from the direct impact of rocks thrown out by the explosion (which would be a common-law trespass) or from concussion.

■■ For the reasons already given in discussing the Vermont statute, we assume that the storage of dynamite in the case at bar was not an act of which the plaintiffs could complain. There was uncontradicted proof that the place of storage and the quantities stored were approved by the deputy fire marshal of the state. While such approval would be no protection against claims of persons inhabiting dwellings within the prescribed zone, the plaintiffs were not of that class and could not have enjoined the storage. The liability of the defendant is not founded on illegal storage or on negligence, which was not proved, but upon the ground that the use of dynamite is so dangerous that it ought to be at the owners' risk.

In Bradford Glycerine Co. v. St. Marys Woolen Mfg. Co., 60 Ohio St. 560, 54 N. E. 528, 45 L. R. A. 658, 71 Am. St. Rep. 740, the defendant manufactured and stored nitroglycerine which exploded and caused damage to the plaintiff. The Supreme Court of Ohio held that the defendant was liable though there was no proof of negligence. To the same effect was the decision in French v. Center Creek Powder Mfg. Co., 173 Mo. App. 220, 158 S. W. 723. These cases followed Rylands v. Fletcher, L. R. 3 H. L. 330, which has found considerable explicit support in this country in the following decisions: Brennan Construction Co. v. Cumberland, 29 App. D. C. 554, 15 L. R. A. (N. S.) 535, 10 Ann. Cas. 865; Wilson v. New Bedford, 108 Mass. 261, 11 Am. Rep. 352; Mears v. Dole, 135 Mass. 508; Cahill v. Eastman, 18 Minn. 324 (Gil. 292), 10 Am. Rep. 184; Wiltse v. Red Wing, 99 Minn. 255, 109 N. W. 114. See also Weaver Mercantile Co. v. Thurmond, 68 W. Va. 530, 70 S. E. 126, 33 L. R. A. (N. S.) 1061; Wigal v. Parkersburg, 74 W. Va. 25, 81 S. E. 554, 52 L. R. A. (N. S.) 465.

While the rule laid down by Blackburn, J., in Rylands v. Fletcher, 1 Exch. at page 265, and approved by the House of Lords in Fletcher v. Rylands, L. R. 3 H. L. page 339, has not been followed in America to the full extent of all its implications, and, at the outset its authority was impaired by Brown v. Collins, 53 N. H. 442, 16 Am. Rep. 372, Marshall v. Welwood, 38 N. J. Law, 339, 20 Am. Rep. 394, and Losee v. Buchanan, 51 N. Y. 476, 10 Am. Rep. 623, yet in the so-called "blasting" cases an absolute liability, without

regard to fault, has uniformly been imposed by the American courts wherever there has been an actual invasion of property by rocks or débris. Asheville Const. Co. v. Southern Ry. Co. (C. C. A.) 19 F.(2d) 32; Ex parte Birmingham Realty Co., 183 Ala. 444, 63 So. 67; G. B. & L. Ry. Co. v. Eagles, 9 Colo. 544, 13 P. 696; Fitzsimons & Connell Co. v. Braun, 199 Ill. 390, 65 N. E. 249, 59 L. R. A. 421; Adams v. Sengel, 177 Ky. 535, 197 S. W. 974, 7 A. L. R. 268; Lexington, etc., Ry. Co. v. Baker, 156 Ky. 431, 161 S. W. 228; Langhorne v. Turman, 141 Ky. 809, 133 S. W. 1008, 34 L. R. A. (N. S.) 211; Scott v. Bay, 3 Md. 431; McAndrews v. Collerd, 42 N. J. Law, 189, 36 Am. Rep. 508; Sullivan v. Dunham, 161 N. Y. 290, 55 N. E. 923, 47 L. R. A. 715, 76 Am. St. Rep. 274; St. Peter v. Denison, 58 N. Y. 416, 17 Am. Rep. 258; Hay v. Cohoes Co., 2 N. Y. 159, 51 Am. Dec. 279; Tiffin v. McCormack, 34 Ohio St. 638, 32 Am. Rep. 408; Rafferty v. Davis, 260 Pa. 563, 103 A. 951; Mulchanock v. Whitehall Cement Mfg. Co., 253 Pa. 262, 98 A. 554, L. R. A. 1917A, 1015; Wells v. Knight, 32 R. I. 432, 80 A. 16; Hickey v. McCabe, 30 R. I. 346, 75 A. 404, 27 L. R. A. (N. S.) 425, 19 Ann. Cas. 783; Gossett v. So. Ry. Co., 115 Tenn. 376, 89 S. W. 737, 1 L. R. A. (N. S.) 97, 112 Am. St. Rep. 846; Schade Brewing Co. v. C., M. & St. P. Ry., 79 Wash. 651, 140 P. 897; Patrick v. Smith, 75 Wash. 407, 134 P. 1076, 48 L. R. A. (N. S.) 740. And the rule of absolute liability for direct injury from blasting has been applied, not only to damage to property, but to the person. Wright v. Compton, 53 Ind. 337; Louisville & N. R. Co. v. Smith's Adm'r, 203 Ky. 513, 263 S. W. 29, 35 A. L. R. 1238; Sullivan v. Dunham, 161 N. Y. 290, 55 N. E. 923, 47 L. R. A. 715, 76 Am. St. Rep. 274; St. Peter v. Denison, 58 N. Y. 416, 17 Am. Rep. 258. See, also, Miles v. Forest Rock Granite Co., 34 Times Law Reports, 500.

It is true that some courts have distinguished between liability for a common-law trespass, occasioned by blasting, which projects rocks or débris upon the property or the person of the plaintiff, and liability for so-called consequential damages arising from concussion, and have denied liability for the latter where the blasting itself was conducted at a lawful time and place and with due care. Booth v. Rome, W. O. T. Ry. Co., 140 N. Y. 267, 35 N. E. 592, 24 L. R. A. 105, 37 Am. St. Rep. 552; Simon v. Henry, 62 N. J. Law, 486, 41 A. 692; Bessemer, etc., Co. v. Doak, 152 Ala. 166, 44 So. 627, 12 L. R. A.

(N. S.) 389; Gibson v. Womack, 218 Ky. 626, 291 S. W. 1021, 51 A. L. R. 773; Rost v. Union Pac. Ry. Co., 95 Kan. 713, 149 P. 679. Yet in every practical sense there can be no difference between a blasting which projects rocks in such a way as to injure persons or property and a blasting which, by creating a sudden vacuum, shatters buildings or knocks down people. In each case, a force is applied by means of an element likely to do serious damage if it explodes. The distinction is based on historical differences between the actions of trespass and case and, in our opinion, is without logical basis. It has been rejected in Colton v. Onderdonk, 69 Cal. 155, 10 P. 395, 58 Am. Rep. 556; McKenna v. Pacific Electric Ry. Co., 104 Cal. App. 538, 286 P. 445; Fitzsimons & Connell Co. v. Braun, 199 Ill. 390, 65 N. E. 249, 59 L. R. A. 421; Watson v. Mississippi River Power Co., 174 Iowa, 23, 156 N. W. 188, L. R. A. 1916D, 101; Longtin v. Persell, 30 Mont. 306, 76 P. 699, 65 L. R. A. 655, 104 Am. St. Rep. 723, 2 Ann. Cas. 198; Louden v. City of Cincinnati, 90 Ohio St. 144, 106 N. E. 970, L. R. A. 1915E, 356, Ann. Cas. 1916C, 1171; Hickey v. McCabe & Bihler, 30 R. I. 346, 75 A. 404, 27 L. R. A. (N. S.) 425, 19 Ann. Cas. 783; Feinberg v. Wisconsin Granite Co., 54 S. D. 643, 224 N. W. 184; Patrick v. Smith, 75 Wash. 407, 134 P. 1076, 48 L. R. A. (N. S.) 740; Schade Brewing Co. v. C., M. & St. P. Ry. Co., 79 Wash. 651, 140 P. 897.

We can see no reason for imposing a different liability for the results of an explosion, whether the dynamite explodes when stored or when employed in blasting. To be sure there is a greater likelihood of damage from blasting than from storage, but in each case the explosion arises from an act connected with a business conducted for profit and fraught with substantial risk and possibility of the gravest consequences. As Justice Holmes has said in The Common Law, p. 154: "The possibility of a great danger has the same effect as the probability of a less one, and the law throws the risk of the venture on the person who introduces the peril into the community."

Frequently as much as one thousand pounds of dynamite were stored by the defendant near a group of dwellings, factories, and a hotel. The fact that the explosion was severe enough to kill three men, blow up the hut, unsettle and damage the plaintiff's house, over nine hundred feet away, and that even then, one hundred pounds of dynamite still remained unexploded, shows that there must have been a large amount of dynamite in or about the hut at the time of the accident. When a person engages in such a dangerous activity, useful though it be, he becomes an insurer.

Furthermore, the imposition of absolute liability is not out of accord with any general principles of law. As Professor Holdsworth has said: "The dominant idea of Anglo-Saxon law" was "that man acts at his peril." 2 History of English Law, 42. See, also, Pollock on Torts (10th Ed.) 15. Accordingly the earlier forms of action such as trespass and trespass quare clausum fregit allowed recovery for a direct invasion of person or property without regard to fault. After the later action "sur case" arose, there was a growing tendency to excuse an act causing damage if the defendant was without fault. But, in trespass, fault ordinarily remained a matter of no consequence, and even in cases of damage to the person·the early decisions prior to Brown v. Kendall, 6 Cush. (60 Mass.) 292, seemed to have imposed liability where there was no negligence. Dickenson v. Watson, T. Jones, 205. Although liability for injury to the person has not in most instances survived except where there has been fault, there still remains absolute liability for trespasses to real estate and for actionable wrongs committed by servants no matter how carefully they are selected by the master. The extent to which one man in the lawful conduct of his business is liable for injuries to another involves an adjustment of conflicting interests. The solution of the problem in each particular case has never been dependent upon any universal criterion of liability (such as "fault") applicable to all situations. If damage is inflicted, there ordinarily is liability, in the absence of excuse. When, as here, the defendant, though without fault, has engaged in the perilous activity of storing large quantities of a dangerous explosive for use in his business, we think there is no justification for relieving it of liability, and that the owner of the business, rather than a third person who has no relation to the explosion, other than that of injury, should bear the loss. The blasting cases seem to afford ample analogies and to justify this conclusion.

Our decision in Actiesselskabet Ingrid v. Central R. R. of N. J., 216 F. 72, L. R. A. 1916B, 716, is relied on by the defendant. There a car of dynamite in the New Jersey freightyard of the respondent exploded without negligence on its part and destroyed the libelant's vessel. The libel was dismissed. While the opinion generally disapproved of

Fletcher v. Rylands, the decision rested mainly on the ground that the respondent was a common carrier, was obliged to take such freight, and was therefore not liable if it stored it properly and had committed no acts of negligence. See, also, Henry v. Cleveland, C. C. & St. L. Ry. Co. (C. C.) 67 F. 426.

It is argued that transportation of the dynamite through the town in small quantities would have increased the risk to the public. This seems to be true, and no reason is shown for taking such a course, because it would have added to the danger without relieving the defendant from absolute liability, had an explosion occurred while the dynamite was on the way.

In the case at bar, the court decided that the Vermont statute made the storage illegal and afforded the plaintiffs a remedy. With this we differ, for the reasons already stated. Nevertheless, as we hold that the defendant acted at its own risk in storing a large amount of dynamite at the particular locality chosen, the error was harmless.

Judgment affirmed.

SWAN, Circuit Judge, concurring, with opinion.

SWAN, Circuit Judge (concurring).

I concur, although for myself I should have been willing to rest affirmance upon section 4323, Rev. Laws Vt.