[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
In this case the plaintiffs have moved for partial summary judgment on count six of their amended complaint as to liability only. In that count the claim is made that the defendant is strictly liable for certain damages caused the plaintiffs as a result of its blasting and stone crushing activities.
The plaintiffs claim they are entitled to summary judgment since the pleadings, affidavits, and other proofs submitted with their motion show no genuine issue of material fact exists as to their claim of liability. CT Page 238 Connecticut Bank Trust Co. v. Carriage Lane Associates,219 Conn. 772, 780 (1991).
Under the doctrine of strict liability "a plaintiff is not required to show that any loss was caused by the defendant's negligence. It is sufficient to show only that the defendant engaged in an ultrahazardous activity that caused the defendant's loss." Green v. Ensign-Bickford Co., 244 Conn. App. 479, 482 (1991). On the other hand, it is still true that "the rule of proximate cause determines the extent of liability in actions based on strict liability, even though proximate cause is not determinant of liability in these situations." Damages, 22 Am.Jur.2d 473 p. 552. There is a dearth of cases on proximate cause issues in strict liability cases. This is not surprising since the nature of the activity forming the basis of liability — often blasting — leaves little question that the damages caused to the plaintiff resulted from that activity. Cf Whitman Hotel Corporation v. Elliot Watrous Engineering Co., 54 F.2d 510, 511 (CA 2, 1931). But as noted in the Restatement of Torts 2d Section 917 comment F, page 499:
 "The rules with regard to the extent of of liability for negligence are also applicable to the extent of liability . . . for the conduct of abnormally dangerous activities, although the rules on the creation of liability in these cases differ essentially . . . Once the cause of action has been created by the tortious impact, the rules of consequential damages are the same for both types of conduct."
The court has examined the depositions attached to their brief by the plaintiffs and the affidavit of their expert, Mr. Buck, as well as the defendant's affidavits. The case of King v. New Haven Trap Rock Co., 146 Conn. 482
(1959) is a blasting case following the strict liability rule of Whitman Hotel Corporation v. Elliott 
Watrous Engineering Co., supra. A blast was set off on a specific date and Ms. King, the property owner, testified that almost immediately after the blast she saw a crack in the living room wall, which had previously been undamaged, and that the water service, which previously had worked properly, was diminished. Id. at page 483. In King the CT Page 239 defendant offered expert testimony based on seismological data to the effect that the blast could not have caused the damage because the King residence was "outside the zone of danger." Vibration and concussion were alleged to have caused the damage not flying debris or rocks. The court upheld a verdict for the plaintiff holding that expert testimony was not essential to prove injury to property and the court was not compelled to credit the defense expert. Mr. Capalbo (Exhibit 7) testified at his deposition that blasting caused the cracking in his walls, there was blasting on October 5 and then he noticed a bunch of cracks but he does not remember the year this happened. He claims that the cracks go deeper and deeper and this is due to increased blasting activity. But an affidavit presented by the defendant indicates blasting activity actually declined over the years in question. Also an affidavit by a Mr. Froedge, who appears to have impressive credentials, directly contradicts Capalbo in stating the blasting and stone crushing activities could not have caused the alleged damage to the building. Mr. Froedge's affidavit is thorough, relates testing to the findings made and raises a material issue of fact as to the cause of the damage to the building. As King indicates it may well be a question for the trier of fact as to whether it "credits" Capalbo or Froedge and the other experts and reports presented by the defendant but that clearly underlines the fact that this case should not be resolved by way of summary judgment.
Neither is the affidavit of Richard Buck of great help on this issue to the plaintiff. It is conclusory and in the court's opinion does not relate the testing data to the damages Buck claims were caused by the blasting and crushing operations, see Buck affidavit, paragraphs 10, 11 and 12.
The Froedge affidavit raises relevant concerns about the testing methodology used by Buck and although it is possible that at the time of trial through further elaboration Mr. Buck's credentials could pass muster and permit him to testify as an expert, the court cannot say, based on a review of his paper resume, that there is not a material issue on this individual's qualifications or at least on the weight his testimony should be given as compared to Froedge. Cf qualifications of expert in Green v. Ensign-Bickford Co., 25 Conn. App. at 488, 489. CT Page 240 At the very least the affidavits submitted by the defendant concerning the frequency of blasting over the years, which seem to contradict the Capalbo claims, provide impeachment material to any Capalbo testimony which is sufficient to preclude summary judgment on the causation issue.
In light of the court's conclusion that the plaintiff has not shown it is entitled to summary judgment for damage to the building because it has not shown the causation link between blasting and stone crushing activity, and the alleged damages, the court declines to write what in effect would be an advisory opinion on whether stone crushing activity should permit a strict liability basis for relief pursuant to Caporale v. C.W. Blakeslee Sons, Inc.,149 Conn. 79 (1961).
The plaintiffs also argue that apart from any damage to their building the blasting activity caused Frank Capalbo emotional damage. At his deposition attached to the motion, Mr. Capalbo said he was injured mentally by the blasting. When asked how, he said he had a customer "not too long ago" that started to run away. He thought he heard an earthquake. He then opined — what if you were here in this office and the "building starts changing and [sic] run away. Then you have to explain to the guy why this is happening — at the same time my guts go in and out." That's it, that's the basis of which the defendant's move for summary judgment on the claim of emotional distress caused by the blasting activity.
Leaving aside for the moment the question as to whether an action in strict liability on facts such as these could warrant a claim for emotional distress, the deposition presented does not establish a basis for the claim. The deposition testimony contains obviously inadmissible hearsay from a customer. Ferryman v. City of Groton, 4 Conn. L Rptr 169, 170 (1991). Cf cases which hold hearsay testimony in affidavits cannot be considered by the court in summary judgment matters. Evans Products Co. v. Clinton Bldg Supply, Inc., 174 Conn. 512, 515
(1978), McColl v. Pataky. 160 Conn. 457, 460 (1971), Sheridan v. Bd of Education, 20 Conn. App. 231, 240
(1989), New Haven Tobacco Co. v. O'Brien, 37 Conn. Sup CT Page 241 815, 819 (1981). It is not clear from the referred-to portions of the deposition if the plaintiff's mental distress resulted from the customer leaving or from actual vibration caused by blasting. There is no reference to the date or even year in which the incident occurred. There is no indication that the mental distress was caused on more than one occasion. All of these considerations would warrant denial of summary judgment.
There are no Connecticut cases on point as to the more general question concerning whether emotional distress should be an element of damages in strict liability cases. Certainly, in some blasting cases where debris is hurled willy-nilly across the landscape one can imagine a scenario where a claim for emotional distress would arise and should be compensated. It would be hard to reach any other result in light of seminal emotional distress cases like Orlo v. Connecticut Co., 128 Conn. 231 or even Mitnick v. Whalen Bros. Inc., 115 Conn. 650. The court has much more difficulty where the alleged emotional distress results not from flying debris or stone or other violent physical impact in proximity to the plaintiff but is allegedly caused by vibration or concussion.
The Restatement of Torts 2d at Section 519(2) (page 34) states that . . . "Strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous." Vibration and concussion can certainly make the type of activity engaged in by the defendant dangerous and even abnormally so if blasting, for example, goes on in close proximity to the plaintiff or his or her business or home, cf King v. New Haven Trap Rock Co., supra. But should liability for alleged emotional harm be allowed in this type of case, where only one incident is referred to, the defendant's activity occurred at some distance from the injured party and there is no indication the defendant was made aware of claimed emotional damage caused by its activities? The discussion in Prosser on Torts, 5th ed., 79 at pp. 559-5560 puts the issue in focus at least for the court. Prosser notes that in strict liability cases the defendant acts at its peril and is an insurer against the consequences of its conduct.
 "But such extended responsibility may undoubtedly impose too heavy a burden upon the defendant. It CT Page 242 is one thing to say that a dangerous enterprise must pay its way within reasonable limits and quite another to say that it must bear responsibility for every extreme of harm that it may cause. The same practical necessity for the restriction of liability within some reasonable bounds, which arises in connection with problems of `proximate cause' in negligence cases, demands here that some limit be set . . . . This limitation has been expressed by saying that the defendant's duty to ensure safety extends only to certain consequences. More commonly, it is said that the defendant's conduct is not the `proximate cause' of the damage but ordinarily in such cases no question of causation is involved and the limitation is one of the policy underlying liability." Section 79 at page 560.
The court would have to have much more than this bare record to grant the motion for summary judgment based on the emotional distress claim as set forth in this case. Necessary questions to resolve this broad policy issue would be — how often is it claimed the vibrations and concussions caused emotional distress, what is the severity of the vibration, can it be established by the testing, how does it relate to the distance from the defendant's activities, are there any studies linking such activity to the causation of emotional distress, do they relate their findings to the distance from the activity or the persistence of the strict liability activity? The facts and law presented in the plaintiffs' briefs do not answer these questions for the court. Perhaps they can be answered at trial but the motion for partial summary judgment is not in the court's opinion an appropriate method to resolve this case and it is denied. CT Page 243