## Beatty v. Louisville & Nashville Railroad Company.

(Decided June 5, 1917.)

### Appeal from Lee Circuit Court.

1. Appeal and Error—Evidence.—A fact which is conceded and admitted by all parties interested on appeal will be considered by this court as true, although it does not appear from the record in the case.

2. Railroads—Removal of Depot—Damages.—If a railroad company removes its track, as contemplated by section 768 of the Kentucky Statutes, and in the manner therein provided for, or removes its depot in accordance with the terms and authority given by section 772 of the statutes, one who owns property contiguous to the abandoned track or removed depot cannot

maintain an action against the company for the consequential damages which he may have sustained by reason of such abandonment or removal.

3. Railroads—Maintenance of Track or Depot.—A railroad company by constructing its track at a particular place, or erecting a depot at a particular place, does not thereby assume any implied contractual obligations with contiguous and adjacent property owners that it will forever maintain its track or its depot at that particular place, and cannot be held in damages as for a violation of contract if it should afterwards by legal permission change the track or remove its depot.

J. K. ROBERTS and J. M. McDANIEL for appellant.

EDWARD S. JOUETT, BENJAMIN D. WARFIELD, SAMUEL M. WILSON, JAMES J. DONOHUE, G. W. GOURLEY and SAM HURST for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

In 1890, a Kentucky corporation called Kentucky Union Railway constructed a line of railroad through Lee county, Kentucky, a portion of which ran along the northern bank of the Middle Fork of the Kentucky river, and with the meanders of that stream. About that time there was established on the part of the road mentioned a depot at a station called St. Helens.

Some time after that the railroad was acquired by another corporation known as the Lexington & Eastern Railway, and later by the Louisville & Nashville Railroad Company, which latter corporation owned it on July 4, 1914.

In 1903, the appellant (plaintiff) purchased a lot about 150 feet from the depot at St. Helens upon which he erected a storehouse at a cost of about $2,500.00, and immediately began in it a mercantile business which he has continued to operate from that time.

For the purposes of shortening the distance and decreasing the cost of maintenance, the appellee and defendant, Louisville & Nashville Railroad Company, prior to July 4, 1914, constructed its road in that vicinity along the south bank of that part of the Kentucky river, thereby shortening the distance and avoiding curves in its track occasioned by following the meanders of the stream. On the day mentioned it abandoned the use of the depot at St. Helens, as well as the track for some miles both east and west of it, and began the use of its newly-constructed track, locating the new depot a short distance south of

the old station of St. Helens, which place it called New St. Helens.

This suit was filed on the 20th day of January, 1915, by which the plaintiff seeks to recover damages of the defendant in the sum of $5,000.00, which he claims to have sustained because of the removal of the depot and the abandonment of the station at St. Helens.

He plants his alleged right of recovery upon the ground that there was an implied contract between himself and the defendant that the latter would forever maintain its railroad station and depot at St. Helens, or that if it should remove them, either with or without statutory authority, that it would respond to him in damages for such removal.

A demurrer filed to the petition was sustained, and the plaintiff declining to plead further, his petition was dismissed, and to reverse the judgment which followed he prosecutes this appeal.

There exists no express contract, written or oral, obligating in any way the railroad company to maintain either its track, depot or station at the place complained of for the use or benefit of the plaintiff. There are no allegations to this effect, and it is expressly conceded that none existed, so we are confronted with the single proposition whether a property owner contiguous or adjacent to a public or *quasi* public highway holds contractual obligations from the owner or operator of the highway that it or any of its facilities provided for public use shall remain, after being once located, permanently at that place.

Clearly, if such obligations exist, no authority from the state, howsoever much the public necessity demanded it, could authorize a removal free from liability for resulting damages. For whatever may be the law, where such contractual obligations exist upon the right of the property owner to compel the continued operation of the railroad at that point, if public necessities require its removal there can be no doubt that the property owner would have his cause of action for damages if he held such obligations preventing the removal. So, we again repeat that the question here is, whether such implied obligations arise from facts similar to those we have here.

Before we enter into a dicussion of the main question it is well enough to make reference to sections 767, 768 and 772 of the Kentucky Statutes. By the terms of the first section mentioned, a railroad company may, after

its road is located, change it, but before doing so it must file a map showing such change and record same in the county court clerk's office of the county in which the change is made.

By the terms of the second section referred to it is provided that the company may, "for the purpose of avoiding annoyance to public travel, or dangerous or difficult grades or curves, or unsafe or insecure grounds or foundations, or for other reasonable cause change the location or grade of any potion of its road; but shall not, except as otherwise provided, depart from the general route prescribed in the articles of incorporation."

By the terms of the last section mentioned it is provided that:

"Any company that has established and maintained throughout the year, for five consecutive years, a passenger station at a point on its road, shall not abandon such station without the written consent of the Railroad Commission."

It is not alleged in the petition that any of the requirements of the sections of the statute referred to were complied with, and technically that fact is not presented in the record, but in the brief of counsel for appellant it is stated:

"It is here conceded that appellee had permission to remove its tracks, station, &c., from St. Helens and that vicinity and this permission was obtained upon its own motion, therefore, it cannot free itself from the resulting damage done to the appellant as the Railroad Commission acts merely on the recommendation of the railroad company."

In other parts of the brief the fact is admitted in language equally as strong, if not stronger, than that which we have quoted. Counsel for appellee also stated the fact as represented by their antagonist.

By the demurrer we are called upon to try the case upon admitted facts, and we are unable to see how the admission of such facts can be any greater under a demurrer than if the admission is expressly made, and we have therefore concluded to treat the case as if the fact of defendant having complied with the terms of the statute in removing its station and depot was expressly stated in the pleading whose allegations are admitted by the demurrer. To do otherwise would require us to endeavor to draw a distinction between admitted facts because of the way and manner in which the admission is

made, and it would furthermore be asking the court to do a vain thing by shutting its eyes to the existence of a relevant as well as a conceded fact which could be manifested by pleading upon a return of the case, and would be decisive thereof after such return.

Besides, much learned and respectable authority exists to the effect that at common law a carrier might change the location of its stations and the facilities therewith connected without being responsible in damages to contiguous property owners. In such cases if that right should be curtailed or regulated by statute, one complaining of a failure to comply with the statute would be called upon, under elementary rules of pleading, to show by his pleading that fact.

However, for the purposes of this case we will not attempt to pass upon the question as to the rights of a common carrier to make such removals under the common law.

In discussing the question presented we shall refer to cases dealing therewith from the standpoint of the right at common law of the carrier to make such removals, and those considering the question under statutory regulations, for clearly it can make no difference, so far as the plaintiff is concerned, whether the right of the carrier to make the removal complained of is obtained from the common law or under our statute as embodied in the sections, *supra,* as his complaint is grounded only upon the fact of removal and not the authority for it.

The general rule, both at common law and as modified by statute, with respect to the right of a railroad company to change the location of its stations or depots is thus stated in 33 Cyc. 143:

"The right to change the location of a station in a particular case cannot be controlled or prevented by contract, or by the fact that private citizens in the expectation of the continuance of a station at a particular place made donation of land or money to the railroad company, or purchased property or established business enterprises in the vicinity of the original location. In same cases the statutes prohibit the abandonment of a station without the consent of the Railroad Commissioners, or the consent of the legislature; but statutory provisions prohibiting the abandonment of a station without legislative authority and permitting a change of location with the permission of the Railroad Commissioners and the municipal authorities of the place where the

station is located are not necessarily conflicting, and it is not an abandonment of a station to change its location from one point to another in the same vicinity."

The part of the above excerpt peculiarly applicable to the present case is that which says, "or purchased property or established business enterprises in the vicinity of the original location."

A similar question was before the United States Circuit Court of Appeals for the Sixth circuit in the case of Jones v. N. N. & M. V. R. Co., 65 Fed. 736, the opinion in which was rendered by Judge Taft. In that opinion the court refers to the cases of Northern Pacific Railway Co. v. Washington Territory, 142 U. S. 492; Commonwealth v. Fitchburg R. Co., 12 Gray 180; People v. N. Y., L. E. & W. R. Co., 104 N. Y. 48, and Florida C. & P. Railway Co. v. State, 31 Florida 482, and then says:

"It is true that the foregoing were cases of mandamus and that the court exercises a discretion in the issuance of that writ which cannot enter into its judgment in an action for damages for a breach of duty But the cases show that the reason why the writ cannot go is because there is no legal right of the public at common law to have a station established at any particular place along the line, or to object to a discontinuance of a station after its establishment. They make it clear that the directors have a discretion in the interest of the public and the company to decide where stations shall be, and where they shall remain, and that this discretion cannot be controlled in the absence of statutory provision. Such uncontrollable discretion is utterly inconsistent with the existence of a legal duty to maintain a station at a particular place, a breach of which can give an action for damages."

In the case of Dewey v. Railroad, 142 N. C. 392, the facts were that two railroad companies with lines entering the city of Goldsboro in the state of North Carolina, were about to erect a union depot at a point some distance from where they had maintained their respective depots previous to that time. The authority to so construct the union depot had been obtained from the Corporation Commission, a department of the state having charge of such matters, when plaintiff and others owning property in the immediate vicinity of the old depots filed suits to enjoin the construction of the union depot and a consequent abandonment of the old ones. The grounds

upon which they sought relief were that they had pur-
chased their property contiguous to the old depots upon
the presumption that the railroad companies would con-
tinue to maintain them, and that because of such, and
relying thereupon, they had invested large sums of money
in their property, and that if the removal took place it
would "greatly injure and impair their investments and
property rights along side streets adjacent thereto."

The petition described the character of property,
some of which was hotel property, and it was made mani-
fest that a removal of the station would result in large
consequential damages to the owners of such property.
The court, after construing the statute of that state to
fully authorize the action taken by the Corporation Com-
mission, in giving its assent to the removal of the depot,
said:

"If this be a correct interpretation of the statute, then
it follows of necessity that the plaintiffs must fail in
their action. The defendants, having legislative author-
ity to make the proposed change, are acting within their
right. So far as now appears, they are only doing, or
proposing to do, 'a lawful thing in a lawful way'; and
in such case, if harm comes to a third person, it is not
a wrong for which the law will afford redress. It is
*damnum absque injuria.* Thomason v. Railroad (plain-
tiff's appeal), at this term· Broom's Legal Maxims (8
Ed.), p. 200; Pollock on Torts (7 Ed.), pp. 126-7, 8 A.
and E. Ency. (2 Ed.) 697. The doctrine is well stated
in this last citation as follows: 'It may be stated as a
general rule that if the legislature, acting within its
constitutional limitations, directs or authorizes the do-
ing of a particular thing, the doing of it in the author-
ized way and without negligence cannot be wrongful.
If damage results as a consequence of its being done, it
is *damnum absque injuria,* and no action will lie for it.' "

The United States Circuit Court of Appeals for the
Fifth circuit, in the case of Texas Pacific Railway Co.
v. Scott, 77 Fed. Reporter 726, had a very similar ques-
tion before it, which was the right of the plaintiff to re-
cover damages for a failure of the railroad company to
keep an agent stationed at one of its depots.

In that case it had abandoned the depot by declining
to maintain an agent at it, but it had not removed the
building. The suit was to recover damages for a failure
to provide an agent at the depot, but under the showing
made the court held the plaintiff not entitled to relief,

referring to and citing the case of U. S. & Tex. Pacific Ry. Co. v. City of Marshall, 136 U. S. 393, wherein the city of Marshall, Texas, sought to force the railroad company by injunctive process to continue the maintenance of its shops in that city. There were some kind of contractual obligations to do this, but the interest of the railroad company, as well as that of the public, demanding the removal of the shops, it was done, and the court declined to grant the relief prayed for, but intimated that a suit for damages might be maintained, based solely upon the express contractual obligations of the railroad company to continue to maintain the shops in the city.

In the case of Kinealy, &c. v. St. Louis, Kansas City & Northern Railway Co., 69 Mo. 658, a citizen and property owner brought suit to recover damages for the depreciation in his property resulting from the action of the railroad company in discontinuing the use of its route adjacent to which his property was located for running of its through trains. A demurrer was sustained to the petition by the trial court, and also by the St. Louis Court of Appeals, to which it was first taken by appeal, and the judgments of both courts were affirmed by the Supreme Court of that state.

Many cases in point are referred to in the opinion. After discussing other phases of the case, the court said:

"Again, there was no contract between the railway company and plaintiffs, either express or implied, that the company should continue to maintain its road or run its trains. Whenever an action is brought for a breach of duty, the party bringing it must show that he has an interest in the performance of the duty, and that the duty is imposed for his benefit, and when the duty is imposed for the benefit of another, or for the public benefit, and his own advantage is merely incident, and no part of the design of the statute, no such right is created as forms the subject of an action.' Field on Damages, section 39. Here it is evident that the construction of the road, and its maintenance, were authorized by legislative enactment, solely for the 'public benefit,' and not for the benefit of any individual composing the public. So that, as between the plaintiffs and the defendant company, there is neither breach of contract nor the breach of duty, and, consequently, no right of action. And this case, therefore, so far as it concerns plaintiffs, stands precisely as if they had bought lots and built thereon contiguous to any other

public improvement, on the faith of the continuance of such improvement.''

See, also, Field on Damages, section 39, and Mills on Eminent Domain, section 317, where the author of the latter work,. in discussing the precise question here involved, says:

''There is no contract with surrounding property owners that a public improvement shall always exist, as at present, and no damages will be allowed for its discontinuance, notwithstanding improvements may have been made on the supposition that they will remain, and notwithstanding property has been thereby enhanced in value.''

Many authorities might be cited, other than Kentucky cases, but to do so would carry this opinion beyond due limits, and we refrain from doing so.

It has with uniform consistency been held by this court that a private citizen has no vested right in the permanent continuance of a public highway for a discontinuation of which he might maintain an action either for damages or to enforce a perpetual maintenance of the highway. Cole & O'Hara v. Shannon, 1 J. J. Marshall 218; Lexington & Ohio Railway Company v. Applegate, 8 Dana 289; Bradbury v. Walton, 94 Ky. 163, and Chenault v. Collins, 155 Ky. 312.

Brief extracts only from some of the opinions showing this court's position upon the question will be sufficient.

In the Applegate case it was said by Judge Robertson, who rendered the opinion: ''An ordinary public way may be discontinued or applied to some other public purpose than that for which it was first established, without any legal liability for pecuniary compensation to the local public, or to any owner of adjoining land, because neither such public nor proprietor had any right of property in the way, or any other legal interest in it than that which was common to all the people.''

In the Bradbury case Judge Pryor, speaking for the court, said:

''A private citizen has no right of property in a public road, although it passes over his own land, unless he owns the land itself subject to the easement. If the owner of land abutting on a public road has a right of property in the easement, it necessarily follows that no change or alteration can be made without first making compensation to the owner (over whose land the change

would run), as it would be a taking of private property for public use without compensation; but he has no other interest except such as is common to the entire public, and when he is the owner of the land, and the road is discontinued, its use then reverts to him to the extent of his title, but no further."

In the Chenault case, proceedings were had for the purpose of changing the location in a turnpike located in Madison county for the distance of about 1,280 feet, which turnpike had under statutory authority been acquired by the county and was at the time a public highway. The appellant, who was the owner of a farm adjacent to the part of the pike which was proposed to be abandoned by the change, appeared in the county court where the proceedings were pending and filed exceptions to the report recommending the change upon the ground that to discontinue that portion of the pike "would greatly injure her place."

There were other objections raising questions not pertinent here, but in disposing of the one just mentioned as being insufficient, the court said:

"A citizen has no right of property in a public road which is adjacent to his land. . . . A property owner in the absence of statutory provisions is not entitled to damages on account of the discontinuance of a county road. Cole v. Shannon, 1 J. J. Marshall, 218; Elizabethtown Railroad Company v. Jackson, 9 Kentucky Law Reporter 242. We therefore conclude that the first ground of exception by Mrs. Chenault is not maintainable."

A railroad is a *quasi* public highway, and at least to the extent permitted by statute, may alter or change the location of its track, stations, and depots. Such action on its part, when so authorized, could not in the very nature of things entail any different consequences or confer any different rights from those flowing from an authorized change of a public highway, and we therefore conclude that the cases from this state to which we have just alluded are pertinent and relevant here upon the question of plaintiff's right to maintain this action.

The cases from this court of L. St. L. & T. P. Co. v. Taylor, 96 Ky. 241; L. & A. P. Electric Railway Co. v. Whipps, 87 S. W. 298, 118 Ky. 121; L. H. & St. L. Railway Co. v. Baskett, 104 S. W. 695, 121 S. W. 957; Lexington & Big Sandy Railway Co. v. Moore, 140 Ky. 512, and Louisville & Nashville Railroad Company v. Neafus, 93 Ky. 53, being cases involving the right to recover

damages for the failure to maintain a depot, have no
bearing upon the question presented by this appeal, be-
cause in each of them there was an express contract with
the railroad company that the depot which had been
abandoned would continue to be maintained.

Plaintiff's attorney insists that it would be against
public policy to allow the depot at St. Helens to be re-
moved.  In this contention he loses sight of the fact that
a legislative enactment is the supreme declaration of the
public policy of that jurisdiction, and when, under the
provisions of our statute, *supra,* the Railroad Commis-
sion, to which the matters complained of here are re-
ferred, have consented to the proposed change and au-
thorized it, they have but carried out the expressed pub-
lic policy of the legislature upon that subject, and which
public policy is paramount to all other inconvenience
which might follow from an execution of the statutory
provisions.  This rule as to legislative utterances being
the supreme public policy is not only the law everywhere,
so far as we are aware, but has been many times an-
nounced and upheld by this court, the two latest cases
being Gathright, et al. v. H. M. Byllesby & Co., 154 Ky.
106, and Gleason v. Weber, 155 Ky. 431.

Appellant relies upon the cases of Mosel, &c. v. San
Antonio & A. P. Ry. Co., 177 S. W. 1048; San Antonio &
A. P. Ry. Co. v. Mosel, 180 S. W. 1138; Jacquelin v Erie
Railroad Company, 69 N. J. Eq. 432, and Fritz v. D. L.
& W. R. Co., 75 N. J. Eq. 348.  An examination of those
cases will reveal that they have no application to a state
of case such as we have here.

In the Mosel cases an effort was being made to en-
force an express contract, and clearly that is no more
pertinent than the ones from this court hereinbefore re-
ferred to.

In the Fritz case, from the New Jersey court, the
same condition existed, and in the Jacquelin case, from
the same court, the opinion, as we read it, holds to the
contrary of appellant's contention.  It is therein said:

"In other words, if common carriers, under obliga-
tion to serve the public, so conduct themselves as to give
rise to rights in the public with respect to the operation
of the road, such rights are public, and are not with re-
spect to the particular individual or individuals who are
affected more nearly than others of the public by a de-
fault upon the part of the company.  To hold that there
is an implied contract—for that is what it amounts to—

between a common carrier and each person who lives along the line of the road, or who uses the road for purposes of transportation, would be, I think, an entirely defenseless judgment.''

It is true that this language is followed by that relied upon by plaintiff's counsel to this effect:

''If, however, it should be held that the railroad, by its conduct towards one of many individuals, had obligated itself by implied contract to continue a service at a particular place, I do not think a court of equity should enforce specifically such implied contract in all cases, if at all.''

Clearly the court did not mean to determine as a matter of law that such an implied contract might arise by conduct of the railroad ''toward one or many individuals.'' It was merely stating that if that proposition should be conceded, still the relief sought by the plaintiff in that case could not be given.

Basing his right to recovery upon that case, it is insisted that plaintiff has shown a peculiar and special damage different from that of other members of the public, and he is therefore entitled to maintain this suit. This contention is made to avoid the universally recognized rule that no private individual may complain because of consequential damages from the refusal to perform public or *quasi* public duties unless the damages which he sustains are peculiar and different from those of other members of the public. An examination of the petition, however, even if this principle would apply here, will show that no such special or peculiar damages are shown in this case. It is simply the consequential damage which plaintiff claims to have sustained because of the removal of the depot from St. Helens. This same kind of damage might be said to have been suffered by all of the adjacent property owners. The fact that plaintiff's damage may have exceeded that of his neighbors constitutes a difference in degree only and not in kind, just as is stated in this court's opinion in the O'Hara case, *supra,* when denying an action similar to the present one brought for the discontinuance of a public road, it is said:

''The road is established for the public convenience. One man has as much right to use it as another. And the rights of all are precisely the same; and, therefore, although one may use it more than another, or may be more benefited by its use, the interest of all is the same in quality. . . . In all these cases the interest of all

the persons, who have been designated, would be the same in kind, although very different in degree."

It is perfectly clear that the plaintiff occupies the same position relative to his right to complain as do his neighbors, and his damages, if any, differ from theirs only in degree, and not in kind.

From the authorities, *supra,* we are unable to perceive wherein there exists any implied obligation on the part of the defendant to continue the maintenance of its depot at St. Helens under the facts of this record, or to respond in damages for the consequential injuries resulting to adjacent property because of its removal.

It is stoutly insisted that the right is analogous to, if, indeed, it does not grow out of, that of compelling compensation for the taking of private property under the exercise of the right of eminent domain. This contention is arrived at by conceding that the defendant had the right, under the provisions of the sections of the statute, *supra,* to do the thing complained of (remove the depot) just as it has the right to condemn and appropriate land for railroad purposes, but (as contended), although it might possess those rights, if it exercises them it must respond in damages to the person injured because of such exercise. The analogy sought to be drawn is not only far fetched, but is not sustained by either the facts or the law.

In the case of the exercise of the right of eminent domain, compensation must be made not only under the express provision of our constitution, but also because there is an actual appropriation of physical property. In the case of the removing of the depot there is no appropriation of any character of property. It is true that plaintiff insists that his right to require the depot to be maintained at the place from whence it was moved is property, which, if true, there might be plausibility in his contention, but the law as we have found it abundantly establishes that such right is not property, which fact at once destroys the force of his supposed parallel illustration.

When plaintiff acquired his property he did so with at least presumed knowledge of the law that the depot and tracks might be removed under the permission given by the section of the statute referred to, and he cannot complain if that permission is subsequently obtained and the right exercised.

We are, therefore, constrained to the conclusion that the court properly sustained the demurrer filed to the petition and dismissed it upon refusal to amend, and the judgment following such rulings is affirmed.