### Gibson, et al. v. Womack.

(Decided March 1, 1927.)

## Appeal from Graves Circuit Court.

1. Limitation of Actions—Cause of Action Arising in West Virginia Between Residents Thereof for Personal Injury Held Not Barred, Though Not Instituted Within "Year," Under Kentucky Laws (Ky. Stats., Section 2542).—Under Ky. Stats., sec. 2542, cause of action arising in West Virginia between residents thereof for personal injury sustained October 8, 1924, was not barred, though not instituted until October 8, 1925, which was not within year, as under Kentucky laws; "year" under West Virginia statute meaning calendar year from date of injury, excluding day on which it occurred.

2. Explosives—Injury by Blasting Gives no Cause of Action, Unless Result of Negligence.—Consequential injury by blasting. such as injury to locomotive engineer in collision with rock sliding on track, gives no cause of action, unless work was done negligently, and injury was result of negligence, not of blasting according to usual methods with reasonable care.

3.  Explosives—Contractors Blasting Held Bound to Take Precaution
    Against Injury by Slide Depositing Rock on Railroad Track.—Road
    contractors must be held to knowledge of probable consequences
    of their blasting operations, though not negligent therein, and,
    if they knew, or could have known, by exercising ordinary care,
    that a slide depositing rock on railroad track below might be
    started thereby, it was their duty to take every precaution against
    injury because of such obstruction.
4.  Appeal and Error—Uncontradicted Evidence Must be Taken as
    True.—Uncontradicted evidence must be taken as true on appeal.
5.  Explosives—Evidence Held Not to Authorize Submission of Road
    Contractors' Negligence in Blasting, Causing Slide Obstructing
    Railroad Track.—In locomotive engineer's action against road con-
    tractors for injuries in collision with large rock on track, as al-
    leged result of blasting operations above, evidence held not to
    make question for jury as to negligence in such operations or
    before rock slid onto track.
6.  Explosives—Contractors Blasting Held Bound to Exercise Highest
    Degree of Care to Notify Trainmen of Rock on Railroad Track.—
    It is duty of road contractors to exercise highest degree of care
    to notify those in charge of approaching train on railroad track
    below of presence of rocks on track as result of blasting opera-
    tions after discovery thereof.
7.  Explosives—Evidence Held Not to Authorize Submission of Ques-
    tion Whether Slide Might Have Been Discovered by Blasters in
    Time to Warn Trainmen.—In locomotive engineer's action against
    road contractors for injuries in collision with rock on track as re-
    sult of blastng operations, evidence held not to authorize submis-
    sion to jury on theory that slide occurred long enough before
    wreck to have been discovered by exercise of ordinary care, or
    was discovered in time, by exercise of highest degree of care, to
    warn those in charge of train.

ROBBINS & ROBBINS and LUCIAN R. SMITH for appellants.

W. J. WEBB for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

The appellant, T. H. Gibson, and G. G. Humphreys
were partners engaged in the contracting business under
the firm name of Gibson & Humphreys. In the year 1924,
they were engaged in road construction work in the state
of West Virginia near Hinton. They were constructing
a public highway for the state, the highway running par-
allel with the line of railroad belonging to the Chesapeake
and Ohio Railway Company. On the north side of the
railroad track is a well-nigh perpendicular cliff from
forty to seventy-five feet high and the slope above the
cliff continues to the top of the mountain. The highway

under construction was on top of the cliff above the railroad and was twenty feet wide. It was necessary in the construction of the highway to blast through the rock formation, and it is not denied that blasting was necessary. The blasting was done by the appellants on the right of way furnished by the state. On the morning of October 8, 1924, between the hours of nine and ten a. m. blast was shot off and seventy-five sticks of dynamite were used. There is no complaint that the charge was unreasonable or that it was not shot off by a competent, careful and prudent man. Gibson, who had charge of the blasting, was a man experienced in that line. The broken stones shot down by the blast were removed except some of the larger stones that it was necessary to break again. Between four and four-thirty p. m. some of these larger stones shot down by the blast in the morning were broken up by another blast, when eight sticks of dynamite were used. No rock or debris was thrown over the cliff on to the railroad right of way or track by the explosion of these two blasts at the time of the explosion. By about five-thirty p. m. appellants had removed from the highway all the loose material and the workmen quit work and went to the camp provided for them about 600 yards from the place of the blasting. In order to get down to the railroad it was necessary to go about 600 feet or to climb down the cliff. It may have been possible to climb down the side of the cliff in the daytime at some points, but the witnesses say that it would not have been safe to try it in the nighttime.

The C. & O. train westward bound, on which appellee was engineer, was due to leave Hinton at seven-ten p. m. It left three or four minutes late. When it reached Tug creek, about a mile and a half west of Hinton, it ran into an obstruction of broken stones and probably of broken rails and ties which caused the engine to turn over. Appellee was seriously injured by being scalded and was in the hospital for several weeks and was unable to work for many months. The fireman was killed. The evidence shows that one big rock, weighing probably twenty tons, came from the mountain side across the highway over the cliff and struck between the two rails of the west bound track and then bounded across to the east bound track, where it came to rest. There were six or eight rocks weighing from 600 pounds to 1,000 pounds each on the west bound track and several smaller boulders. These

stones were caused by a slide from the mountain side north of the highway commencing about four feet above the grade of the highway and extending upward about twenty-two feet. The slide covered up the steam shovel on the highway which was used by appellants and the stones mentioned above went over the cliff on to the railroad track.

On the 8th day of October, 1925, appellee filed his petition in the circut court of Graves county, Kentucky, in which he alleged that the appellants:

> "Through their agents, servants and employees, negligently and carelessly caused and permitted a great quantity of rock and dirt to slide from the place where they were blasting down on to and on the side track of the Chesapeake and Ohio Railway Company and negligently and carelessly failed to guard said obstruction or to warn anyone of its existence, with the result that a railroad train of the Chesapeake and Ohio Railway Company, on which the plaintiff was an engineer, ran into the said pile of rock and dirt during the nighttime."

The basis of the cause of action as set out in the petition is that appellants negligently and carelessly caused and permitted the rock to slide on to the railroad track, and further that appellants negligently and carelessly failed to guard said obstruction or to warn anyone of its existence. This is denied by the answer. The answer also contains a plea of limitation and that will be first disposed of. There was a plea by amended answer of contributory negligence.

As such causes of action as this must be instituted within one year from the date of their occurrence and as the injury occurred on the 8th day of October, 1924, and the suit was not instituted until the 8th day of October, 1925, the cause of action was not brought within one year under the laws of the state of Kentucky, but it is insisted that as all the parties lived in West Virginia at the time of the accident the laws of that state govern as to the limitation of the action. It is proven by the deposition of a lawyer in West Virginia that under the laws of that state such an action as this must be brought within one year from the date of the injury and that the word "year" means a calendar year and that by the laws of West Virginia a calendar year means a year from the

date of the injury, excluding the day on which the injury occurred. Section 2542, Ky. Stats., provides that when a cause of action has arisen in another state between residents of such state, an action cannot be maintained in this state on the cause of action if the action is barred in the state where the injury occurred. This court has held that where the cause of action is not barred in the state where the action originated and all of the parties were residents of that state, it is not barred in this state in a suit between the same parties. Smith v. Baltimore & Ohio Railway Co., 157 Ky. 113; Labatt, etc. v. Smith, etc., 83 Ky. 599; John Shillito Co. v. Richardson, 102 Ky. 51.

We find no evidence in the record which shows that appellee was guilty of contributory negligence, and that disposes of another plea of appellants.

The main question in this case is whether appellee can recover at all under the evidence presented by this record. If the evidence did not make out a case against appellants the court should have sustained the motion of appellants for a peremptory instruction. Appellants insist that there should have been evidence showing that they were guilty of negligence in the blasting upon the highway, which negligence was the proximate cause of the injury, before the case could be submitted to the jury. On the other hand, appellee insists that if, as a result of the blasting, the rock and dirt slided on to the railroad track, although without negligence in the method of operation on the part of appellants, and the appellants failed to exercise ordinary care to warn approaching trains of the obstruction on the track and that their failure to exercise ordinary care in this respect was the proximate cause of the injury, the case should have been submitted to the jury. We find a sharp conflict between counsel over this question. Counsel for appellee rely upon the cases of Langshorn v. Wilson, 91 S. W. 254; Langhorne v. Turman, 141 Ky. 809, and L. & N. R. R. Co. v. Smith's Admr., 203 Ky. 513. An examination of these cases discloses that the opinion in each of them was based upon the idea that the throwing of rocks or other physical objects upon the lands of another was a direct trespass and the one doing the blasting was held responsible for any injury resulting, regardless of whether the blasting was done negligently or with the utmost care. The question is whether the same rule applies to consequental injuries. In this case there had been no blasting

for about three hours before the wreck, and about two hours before the wreck appellants made a careful examination of the premises to discover whether there was any evidence of loose rocks which might slide on the railroad and found none. The slide occurred not as the immediate result of the blasting, if it was caused by the blasting, but followed some hours thereafter. Counsel for appellants insists that under such circumstances the rule announced in the cases above cited prevails. He cites 11 R. C. L., section 27, page 673, as the law governing the throwing of rocks and debris on the premises of another which constitutes a direct trespass. That section in part is as follows:

> "The decided weight of authority supports the view that where one explodes, blasts on his own land and thereby throws rock, earth or debris on the premises of his neighbor, he commits a trespass and is answerable for the damage caused, irrespective of whether the blasting is negligently done."

He cites 11 R. C. L., section 28, on the question of concussion or vibration as a trespass. That section states that there is a conflict of authority as to whether one, who by blasting with powerful explosives produces concussion or vibration in surrounding earth and air and thereby damages buildings belonging to others, is liable regardless of whether the one doing the blasting is negligent. Some of the courts hold that, since recovery is permitted for damage done as the result of throwing stones or dirt by a blasting operation upon adjoining premises, there is no valid reason why recovery should not be allowed for damages resulting to the same property from a concussion or vibration sent through the earth or air by the same explosion. These courts hold that it is as much a physical invasion of the property in one case as in the other. The last section above referred to in discussing the position of courts taking the contrary view states:

> "According to this rule if one in blasting upon his own land invades the premises of his neighbor, by throwing stones and debris thereon, he is liable for the resulting injury; but for any other injury, such as may result from the mere concussion of the atmosphere, sound or otherwise, there is no liability unless it is shown that the work was done negligently,

and that the injury was the result of negligence, and not the result of blasting according to the usual methods and with reasonable care.''

Under this latter rule it would be necessary to show affirmatively that the blasting was negligently done before a plaintiff could recover. Appellants cite the case of Hieber v. Central Kentucky Traction Co., 145 Ky. 108, as supporting this latter rule. In that case Hieber filed his petition against the traction company in which he alleged that it was conducting an electric railway upon the turnpike running from Frankfort to Lexington; that he was a blacksmith having his place of business on the turnpike, which was well known to the traction company; that he was constantly engaged in shoeing horses, which also could have been known to the traction company, and that the blasts were calculated to scare the horses which he might be shoeing and thereby place him in great peril; that while he was engaged in shoeing a horse a blast of heavy explosives was shot off in the quarry, creating a loud noise, which frightened the horse, and as a result of the fright it seriously injured Hieber. A demurrer was sustained to his petition. He filed an amended petition in which he pleaded that the traction company was negligent in its blasting operations and that as the result of that negligence he was injured. A demurrer was sustained to the petition as amended and this court affirmed the judgment of the lower court. The opinion of this court was based upon the opinion in the case of Mitchell v. Prange, 110 Mich. 78. The court said:

"We do not see that these averments are sufficient to make out for the plaintiff a cause of action, and while these matters are referred to in the opinion of the court in Mitchell v. Prange, we do not understand that the court rested its judgment on them. The opinion seems to be rested on the broader ground that both the parties were engaged in lawful acts, each upon his own premises, and that the injury was a mere casualty. In the case at bar, while the plaintiff alleges that the quarry was near the blacksmith shop, he does not state how near, and from all that appears, it may have been further from it than in the case referred to. If the defendant used in its quarry an excessive amount of explosive, and by reason of this, hurt some one, it would be liable.

But any amount of explosive which is sufficient to blast rock will cause a vibration of the air, and make a report. A neighboring proprietor cannot complain of the amount of explosive used unless it does him some damage.''

The court then refers to the case of Henry Hall's Sons Co. v. Sundstrom & Stratton Co., 139 N. Y., *supra*, 391, and quotes from it as follows:

''Blasting upon one's own premises or upon the premises of another, with permission of the owner, if necessary for the improvement thereof, is not an unlawful act. Such blasting necessarily causes vibration of the earth and air to a greater or less extent. Such vibrations cannot be confined within inclosed limits. Hence it must follow that if rightfully and not negligently caused, even though consequential injuries result therefrom, the sufferer is without remedy. Benner v. Atlantic Dredging Company, 134 N. Y. 156, 31 N. E. 328, 17 L. R. A. 220, 30 Am. St. Rep. 649; Booth v. R. W. & O. T. R. R. C., 140 N. Y. 267, 35 N. E. 592, 24 L. R. A. 105, 37 Am. St. Rep. 552; Holland House Company v. Baird, 169 N. Y. 136, 62 N. E. 149; Miller v. Twiname, 129 App. Div. 623, 114 N. Y. Sup. 151. But when the results of blasting are not consequential, but direct. when dirt and stones are cast upon the premises of another, so that there is an actual physical invasion thereof, the question of negligence or want of skill is wholly immaterial.'' (Cases cited).

The court quotes with approval from the case of Bessemer, et al. Co v. Doak, 12 L. R. A. (N. S.), 389, an Alabama case, as follows:

''We think that according to the best-considered decisions, the rule is that if one, in blasting upon his own lands, invades the premises of his neighbor, by throwing stones and debris thereon, he is liable for the resulting injury; but for any other injury, such as may result from the mere concussion of the atmosphere, sound or otherwise, there is no liability, unless it is shown that the work was done negligently, and that the injury was the result of negligence, and not the result of blasting according to the usual methods and with reasonable care.''

In adopting the rule announced by the Alabama court this court has adopted the rule in this state that a consequential injury caused by blasting resulting from the concussion of the atmosphere, sound or otherwise, gives no cause of action against the one doing the blasting unless it is shown that the work was done negligently and that the injury was the result of negligence and not the result of blasting according to the usual methods and with reasonable care.

There is no evidence in this record that appellants were guilty of any negligence in their blasting operations. They must be held, however, to a knowledge of the probable consequences of their acts, and if they knew, or by the exercise of ordinary care could have known, that as a result of their blasting operations a slide might be started which would end up by depositing rocks on the railroad track, it was their duty to take every precaution against the happening of any injury which might result by reason of an obstruction on the railroad track so caused. The proof in this case shows that they were blasting away the side of a cliff and that they made an examination of the cliff side before they quit their work on the afternoon of October 8th, to see if there was any evidence of the loosening of stones or earth which might slide over the cliff. This evidence is not contradicted and must be taken as true. It is shown by the evidence that the slide was caused by a mud seam, that is, there was a strata of mud running vertically from just above the grade of the highway several feet up the cliff. It may be that the vibration caused by the blasting shook loose the rock superimposed on this strata of mud, or it may be the removal of earth and rock which had supported the rock lying on the mud seam was the cause of the slide. If the appellants did not know there was a mud seam at this particular place, and if they could not by the exercise of ordinary care discover the mud seam, it cannot be said that they were held to a knowledge of the probable consequences in removing the support or in jarring the rock lying on this mud seam. The mud seam sloped northward toward the top of the mountain. If they had known there was a mud seam it might be said that they foreknew the probable consequences of removing the support and blasting, but when they looked at the rock it appeared to be a solid rock and they had no reason to believe that there was a mud seam if it could not be discovered until after the slide had taken place.

There is nothing, therefore, showing any negligence on the part of appellants before the sliding of the rocks on to the railroad track.

It was the duty of appellants to exercise even the highest degree of care to notify those in charge of the approaching train of the obstruction on the track after it was discovered. The proof fails to show by any witness exactly when the slide took place. If it had been shown that the obstruction was on the railroad track a sufficient length of time so that by the exercise of ordinary care the appellants should have known it was there, or if the proof had shown that they had actual knowledge of the obstruction and failed to use the highest degree of care to notify those in charge of the approaching train, there would have been something to submit to the jury, but so far as the evidence goes there is nothing upon which we can base an opinion that the slide occurred a sufficient length of time before the wreck that it might have been discovered by the exercise of ordinary care, or that if it had been discovered there was sufficient time thereafter by the exercise of the highest degree of care to warn those in charge of the approaching train. If appellants had no reason to believe that a slide might take place, and if they had no knowledge that it had taken place, it cannot be said that they were guilty of negligence. Assuming that the watchman might have been on the highway at the time the slide took place, there is nothing in the evidence to show that he could in any manner warn those in charge of the approaching train in time to prevent the wreck. The highway was forty feet above the railroad track and it was difficult if not impossible to get down to the railroad track without traveling about 600 feet. The only evidence from which a conclusion might be drawn as to the length of time the slide took place before the wreck must be deduced from the circumstances, and that is not entirely satisfactory. There was a signal post about 1,000 feet east of the wreck. The engineer, who is the appellee, saw the signal and it was clearly indicated that there was no obstruction in front of him. The signal works automatically. It is in proof that the stone which fell on the west track struck about the center of the track and it was so large that it struck both rails. It weighed 20 tons. The ties and rails were broken, whether by the impact of the stone, or as a result of the wreck, is not certainly shown, but this twenty-ton stone falling a distance of about seventy-five

feet, with a clear drop of forty feet, striking as it did between the rails and digging a crater where it struck must have broken the rails and destroyed the track. If this be true, and the broken rails there destroyed are evidence that it is true, the slide took place after the engineer passed the signal post. He says he was running between twenty and twenty-five miles an hour and picking up speed. If he was running twenty miles an hour he was making a mile every three minutes, and as the signal post was about one-fifth of a mile away from the wreck he ran that distance in thirty-six seconds. There was no opportunity for a watchman or any other person to have given warning of the obstruction. If it should be assumed that the falling of the stones on the track did not sever the connection and change the signal, still there is no proof whatever in the record to show that the slide occurred a sufficient length of time before the wreck to have enabled appellants to give notice of the danger. Having this view of the case we have reached the conclusion that the lower court erred in overruling the motion of appellants for a peremptory instruction directing the jury to find for them.

Judgment is reversed for proceedings consistent with this opinion.