## Brooks-Calloway Company v. Carroll.

(Decided June 20, 1930.)

E. H. GAITHER, for appellant.

C. E. RANKIN for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

The Brooks-Calloway Company, hereafter called the company, seeks to reverse a judgment for $2,900 recovered against it. This company has been engaged, during recent months, in widening the roadbed of a portion of the Southern Railway system in Mercer county. In doing this work it was necessary to make deep cuts through hard limestone, in doing which it used high-powered explosives. Mr. S. A. Carroll owns a farm, and two rather deep cuts were made near his farm. One is the Burgin cut, and the other seems to have been given two names—sometimes it is referred to as the Edelin and other times as the Dossett cut.

Mr. Carroll has on his farm a large three-story brick residence with a 9-foot stone basement. The residence contains 23 rooms, and the evidence is that it was a well-built and nicely finished house. He had near his house a large cistern, 23 feet deep, 14 feet in diameter, walled with brick and cemented. This residence is about 4,750 feet from each of these cuts. The evidence is so conclusive that it is practically admitted that as a result of the explosives used in making these cuts the wall of this cistern was cracked so that it would no longer hold water, and the cost of repairing it was a little over $100. This residence itself was much injured, the plastering was so broken and cracked that, to restore the building to anything like its former condition, it will have to be replastered. The brick walls of this building were cracked in many places, and a builder and contractor who examined the house and described the cracks says that many of the bricks in the walls were broken,

and he estimates the number of broken bricks at 2,500. His estimate, on the repairs, was that it would cost $3,734 to make them. The company does not question seriously the extent of these injuries, and introduced no evidence on the subject, but rested its defense upon the idea that in doing this work it had adopted the best approved method, and had done this work in the usual and customary way.

Shortly after the work was started, Mr. Carroll called on Mr. Lawrence, the company's superintendent, and explained to him what this blasting was doing to his residence, and asked Mr. Lawrence to come and see it. Mr. Lawrence set a date to come but on that date he called Carroll, and said he was not able to come, and made a new date. He did not come on the second date, and Carroll went to see him again, and Lawrence told him he was a busy man and could not come. Then Carroll saw a lawyer, and had the lawyer to notify the company of what was being done, but the company paid no attention to it, and the blasting went on.

The company relies on four grounds for the reversal of this judgment, which we shall state and dispose of as we get to them.

The first is that the court erred in the admission of evidence; the alleged error consisting in allowing Carroll to testify that these cuts could have been made without using such large qauntities of explosives, when Carroll had not shown himself to be an expert in such matters, but it does not take an expert to know those things. Those things are known to the ordinary man, and the witnesses for the company admitted on cross-examination this work could have been done by using smaller blasts, but said it would take longer to do the work.

The method used was this: They would drill six or eight large holes from 6 to 8 inches in diameter, then drill about forty jack hammer holes, which were about an inch and one-fourth in diameter. The large holes were drilled about 20 feet deep, and the jack hammer holes 12 or 14 feet deep. The dynamite used was of different strengths, some being referred to as "40's" and some as "60's," and into these jack hammer holes they would then load between 700 and 800 sticks of dynamite, and would load between 600 and 800 sticks into the large holes, thus making a total of between 1,300 and 1,600 sticks fired at a time. The evidence for the defendant is that this is the usual and customary way of doing work

of this kind, and the defendant relies on these cases in support of its contention; Gibson v. Womack, 218 Ky. 626, 291 S. W. 1021, 51 A. L. R. 773; Campbell v. Adams, 228 Ky. 156, 14 S. W. (2d) 418; Beatty v. L. & N. Ry., 176 Ky. 100, 195 S. W. 487; Gott v. Berea College, 156 Ky. 376, 161 S. W. 204, 51 L. R. A. (N. S.) 17.

Usually, where damages results from the use of such explosives, it falls in one of three classes: (a) Personal injuries from stones thrown thereby; (b) damages done to property by stones thrown onto it; and (c) damages resulting to property from the vibration and concussion produced by the explosion. All of the damages complained of here fall under class (c). The evidence objected to bore on the question of negligence, and was properly admitted.

The company's next ground for reversal is that the court erred in refusing to instruct the jury peremptorily to find for it. It made such a motion at the conclusion of the plaintiff's evidence, and the court overruled it. At the conclusion of all the evidence, it renewed its motion with the same result. We admit that under the rule adopted in this state, as appears from the cases cited above, there can be no recovery for class (c) damages unless it is shown the work was negligently done, and that the injuries resulted from the negligent doing of the work. The company's responsibility here rests upon this old and often quoted doctrine: Sic utere tuo ut alienum non laedas; a maxim meaning: "So use your own as not to injure another's property."

Our question is: Was the company negligent in doing this work so as to make this doctrine applicable and to cause responsibility for the resulting damages to rest upon it? It was the duty of the defendant to use ordinary care in doing this blasting to avoid injury to plaintiff's property. If it were suggested that, in view of the fact that the plaintiff's property was almost a mile away, and that an ordinarily prudent man would never have dreamed that the blasting would injure it, then the answer to that is found in the failure of the company's superintendent to take any notice of the injuries that were being done to Carroll's property by these excessive explosions.

Negligence is the failure to use that degree of care which an ordinarily prudent man would use under the same or similar circumstances. When Carroll notified the company's superintendent that these explosions were

injuring his residence, a man of ordinary prudence would have investigated the matter, and would have endeavored to so conduct this work as to avoid inflicting such injuries. Such would have been the course pursued by the average reasonable man of ordinary prudence, but the superintendent of the company was too busy to do it, and the company will have to suffer as a result. The question of the company's negligence was properly submitted to the jury.

The company's next complaint is that in the instructions the court told the jury they should find for the company unless it used larger quantities of explosives than was reasonably necessary, it being the company's contention that the jury should have been told to find for it, unless it failed to do this work in accordance with the usual method and with reasonable care. There is no merit in the company's contention. The question for the jury was not were the methods used the usual ones and the quantities of explosive used the usual ones, but were the methods reasonable under the circumstances and were the quantities of explosives used such as were reasonably necessary?

As pointed out in Beauchamp v. Saginaw Mining Co., 50 Mich. 163, 15 N. W. 65, 45 Am. Rep. 30, the degree of care in the use of explosives depends upon the circumstances of the case.

It is no defense that the use of proper care or smaller shots would cause extra labor, expense or delay or diminish the profit of the business. The company must have regard for what it is doing to other people's property as well as what it is seeking to do to the property upon which it is at work.

The company's next complaint is directed to the measure of damages, its contention being that the true measure is the difference between the market value of the farm just before this injury and the market value of the same farm just after the injury had been done, but in the cases of States Corp. v. Schull, 216 Ky. 57, 287 S. W. 210, L. & E. Ry. Co. v. Baker, 156 Ky. 431, 161 S. W. 228, and Gorham & Co. v. Carter, 228 Ky. 214, 14 S. W. (2d) 749, we have held to the contrary.

The court properly fixed the measure of the plaintiff's recovery at such a sum as will enable the plaintiff to restore the house and cistern to substantially as good a condition as they were before the injury. The judgment is affirmed, with damages.