The **METROPOLITAN CASUALTY IN-SURANCE COMPANY OF NEW YORK, a corporation, and Firemen's Insurance Company of Newark, New Jersey, a corporation, Plaintiffs,**

v.

**Anna Mae JOHNSTON, Herman E. Johnston, Barbara Ann Elliott, Clifford Elliott, Ruby Mae Elliott, a minor, and Mary Ann Elliott, a minor, Defendants.**

**No. KC-621.**

United States District Court
D. Kansas.

Nov. 9, 1956.

---

1. See House Report No. 1365, February 14, 1952, reprinted in 2 U.S.Code Cong. and Adm.News, 1952, pp. 1653, 1706.

**6**

Donald N. Clausen (of Clausen, Hirsh & Miller), Chicago, Ill., and Donald C. Little (of Bates & Little), Kansas City, Kan., for plaintiffs.

Pete Farabi, Pittsburg, Kan., and Edward V. Sweeney, Monett, Mo., for defendants.

MELLOTT, Chief Judge.

The present suit, instituted by the insurance carriers as plaintiffs, seeks a declaratory judgment under Title 28 U.S.C. § 2201. Diversity of citizenship and requisite amount in controversy exist to give this court jurisdiction under Title 28 U.S.C. § 1332(a).

The basic facts are not in dispute. A policy of insurance was issued by the plaintiffs on or about February 15, 1952, under which they became liable to pay on behalf of Anna Mae Johnston and her husband, Herman E. Johnston, of Bourbon County, Kansas, their liability for bodily injury and property damage (within the limits of the policy) caused by the use of a described automobile. On February 11, 1953, while the automobile was being driven by Herman E. Johnston, one of the insured, a collision of it with another automobile occurred, resulting in claims being made by members of the Elliott family, several of whom had been riding in the other automobile, that they had been injured and damaged in substantial amounts. The members of the Elliott family were made parties in this action, as contemplated by Title 28 U.S.C. § 2202, guardians *ad litem* were appointed for those who are minors and motions to dismiss were filed by or for each of them. Thereafter answers were duly filed on behalf of all of them. The insured, Anna Mae Johnston and Herman E. Johnston, although duly served with summons, have not answered and are now in default.

After issue was joined, counsel for the plaintiffs and the Elliotts stipulated that depositions taken in an action previously filed in the Circuit Court of Vernon County, Missouri, should be filed in this case and have "the same force and effect" as if taken in it. Other depositions were taken and filed, affidavits were prepared and brought onto the record and counsel for each of the parties filed a motion for summary judgment under Rule 56, F.R.Civ.P., 28 U.S.C. alleging that there is no genuine issue as to any material fact.

Sketchily stating the facts, they disclose that some three months after the collision occurred, the attorney who had been employed by the Elliotts sought out

Johnston and told him he wished to bring suit against him in Missouri rather than in Kansas. Johnston agreed, stating later, when his deposition was taken in this case, that he thought the fact he was a known professional gambler might prejudice a home town jury against him and for that reason he had gone to Missouri where summons had been served upon him after he had been pointed out and identified by the Elliotts' attorney.

The insurance companies undertook the representation of Johnston in the litigation in Missouri with the understanding that they waived none of their rights under the insurance contract; but when their representatives. questioned him about his actions in connection with the Missouri service, he misrepresented the facts to them because, as he admitted when his deposition was taken in this suit, he had not then been under oath and did not like the one who interrogated him.[1]

In the suits in Missouri the insurance companies, acting for Johnston, moved to quash the service of summons. The motions were sustained on the grounds that the suits had been brought in that court by collusion between the parties and that such acts constituted a fraud on the taxpayers of the county where instituted. An appeal was taken to the Supreme Court of Missouri, Elliott v. Johnston, 292 S.W.2d 589 and heard by a Division of that court, which affirmed the action of the trial court and held that the lower court could, in its discretion, decline to assume jurisdiction, under the doctrine of *"forum non conveniens,"* and that its discretion had not been abused. The case is now pending before the Supreme Court of Missouri *en banc,* the court having declined to grant an application to dismiss it filed on behalf of the Elliotts, plaintiffs in the actions in the lower court.

Four days before the ruling by the Circuit Court of Vernon County, Missouri, referred to above, and on the last day before the statute of limitations of Kansas would have barred the institution of the suits in that state, 60–306, G.S.Kan.1949, the Elliotts instituted two actions against Johnston in Crawford County, Kansas. Johnston, who was not a resident of that county, 60–509, G.S. Kan.1949, again acting on an understanding with the attorney for the Elliotts, entered that county for the purpose of permitting service of process upon him. Those suits have been dismissed since the commencement of this action.

The arguments upon brief are directed solely to the plaintiffs' motion for summary judgment. The *defendants' motion is palpably without merit and must be denied.* The sole issue for determination is whether the insurance companies are absolved of responsibility to defend the insured and to pay, within the limits of their contract, such judgments as might be rendered in actions instituted

1. Johnston, during the course of his examination upon deposition in this case, several times admitted that he had not told the truth when examined by a representative of the insurance company prior to argument on the motions to dismiss in the Missouri court. Typical are the following questions and answers:

"Q. Why did you want to lie? I mean when that statement was taken and you swore to tell the truth, why did you want to tell untruth? I just don't understand that. A. Did you ever see somebody you didn't like?

"Q. Why did you want to tell lies when your statement was taken pertaining to the situation with respect to service of process at Nevada? A. I told Mrs. Noble that I wasn't under oath and I can say anything to him that I wanted to at that time.

"Q. But why didn't you want to tell the truth? A. Did it ever occur to you I don't like him? I kinda like you and I've told you the truth." (Dep., p. 26.)

To many questions asked concerning Johnston's submission of himself to service of process in the Missouri case, he answered "I don't remember." Being shown a statement made to an agent of the company, he declined to state whether the portions attributed to him were correct or not and said that the statement had been signed because he thought "that was the easiest way.".

or to be instituted by the Elliotts. The rights of the Elliotts to recover judgment against the insured are not before this court.

The policy contains the usual "cooperation" clause, requiring the insured to

" * * * cooperate with the company and, upon the Company's request, * * * attend hearings and trial and * * * assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation nor incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the accident."

The actions of the insured seem to fall into three general categories: collusively and voluntarily submitting himself to service in the six cases instituted in the Missouri court in behalf of the Elliotts; giving plaintiffs' investigator false and misleading information in connection with his efforts to ascertain the facts pertaining to the service of process in those cases and not cooperating with him and the insurance companies in getting the cases ready for trial; and collusively and voluntarily submitting himself to service in the cases instituted in a county in Kansas other than the county of his residence where the venue of the action lay.

It is argued on behalf of the Elliotts that no prejudice resulted to the insurance companies from Johnston's actions. The argument is premised largely upon Johnston's statement while testifying upon deposition in this case that the reason he had collaborated so actively with his nominal adversaries rather than with his insurance carriers was because he was known in his home community as a professional gambler and preferred to have the case tried in some other jurisdiction. The Division of the Supreme Court of Missouri in its opinion quoted counsel for the Elliotts as having told Johnston that he " 'would rather sue him in Missouri than in Bourbon County, Kansas' "; [29 S.W.2d 592] and, after referring to counsel's statement to the effect that he liked the nine-man verdict authorized under the laws of Missouri " 'better than he did the twelve over in Kansas' ", expressed the view that it was "a fair inference * * * [counsel], aside from any supposed advantages in procedure, * * * may have been influenced in his choice of a forum by 'the reputed largesse' of Missouri juries as compared with Kansas juries."

This court is inclined to take essentially the same view of the admitted facts as that taken by the Missouri courts. That there was a failure of the insured to cooperate with his insurers, which was of such gravity as to prejudice them, seems clear. As pointed out by the Court of Appeals for this Circuit,[2] "cooperation with the insurer is one of the conditions of the policy. When the condition was broken, the policy was at an end, if the insurer so elected." Nor is the argument to the effect that the insurers suffered no prejudice from being required to go into other jurisdictions to defend the suits sound. It misconceives the effect of the failure of the insured to cooperate with the insurers as specified in the contract. They were charged with the responsibility of defending the insured. They, rather than he, had the right to determine whether it was advantageous to try such actions as might be instituted against him in the court of his domicile or in some other. They also had the right to expect of him absolute truthfulness—"the keystone of the co-operation arch." [3]

2. United States Fidelity & Guaranty Co. v. Wyer, 10 Cir., 60 F.2d 856, 858. Cf. Coleman v. New Amsterdam Casualty Co., 247 N.Y. 271, 160 N.E. 367, 72 A.L.R. 1443, and the other cases cited in the Wyer case.

3. Metropolitan Casualty Ins. Co. v. Richardson, D.C., 81 F.Supp. 310, 315.

Extended discussion of the many authorities cited in the briefs would serve no useful purpose. See, however, the cases and annotations indicated in the margin.[4] It suffices to state this court is of the opinion, and now holds, that plaintiffs' motion for summary judgment should be sustained. Order so providing is this date being entered.

4. Coleman v. New Amsterdam Casualty Co. (cited in footnote 2, supra) and annotation 72 A.L.R. 1046; Ocean Accident & Guarantee Corporation v. Lucas, 6 Cir., 74 F.2d 115, 98 A.L.R. 1461 and annotation 1465; American Fire & Casualty Co. v. Vliet, 148 Fla. 568, 4 So.2d 862, 139 A.L.R. 767 and annotation 771.