Curtiss DUCKETT and Mable Duckett,
Plaintiffs-Appellees,

v.

CLEMENT BROTHERS COMPANY, Inc.,
Defendant-Appellant.

No. 16864.

United States Court of Appeals
Sixth Circuit.

April 13, 1967.

Terry L. Hatchett, Glasgow, Ky., for appellant.

Marion Vance, Glasgow, Ky., for appellees.

Before WEICK, Chief Judge, and O'SULLIVAN and EDWARDS, Circuit Judges.

O'SULLIVAN, Circuit Judge.

Clement Brothers Company, Incorporated, appeals from a judgment entered upon a jury verdict awarding $5,000 to plaintiffs-appellees, Curtiss and Mable

Duckett, for damage to their dwelling allegedly caused by blasting operations carried on by appellant. The blasting was done in the course of appellant's performance of its contract to construct a dam and spillway on Barren River, near Finney, Kentucky, for the United States Corps of Engineers. We set out and discuss appellant's claims of error as follows:

### 1) Insufficiency of pleadings.

■ The complaint did not use the word "negligence" in describing the alleged tortious conduct of defendant and appellant's brief here emphasizes such fact in support of a claim that negligence was not established. At trial no attack was made upon the sufficiency of the complaint because of such failure. The complaint did describe the conduct of the defendant in strong and condemnatory language. It alleged that defendant exploded,

"large quantities of explosives, and thereby produced violent concussions and vibrations of the earth and air, which shook the said land and dwelling and other buildings, water well and cistern and property of these plaintiffs, and the air above and around them, and threw rock, dirt, stone and debris on and against the lands, buildings and property of plaintiffs;"

that defendant,

"Well knew or should have known of the possibility of damage * * * and of the creation of a nuisance;"

that,

"said blasting, explosions, dynamiting by defendant has been both an actual and constructive trespass upon the lands and possessions, and the use thereof, of these plaintiffs * * * that although the plaintiffs did on many occasions complain to defendant * * * and did request defendant to desist * * * defendant * * * wilfully and maliciously continued to set off blasts and explosions;"

and that defendant,

"was guilty of wanton and reckless disregard of the rights and property of the plaintiffs; [and that] all * * * damages were directly caused by and the proximate result of the blasting * * * of the defendant."

A discerning defendant, thus colorfully advised, could hardly miss knowing that plaintiffs were quite mad at it, and be aware of the case it had to meet. A charge of negligence could easily be distilled from the complaint's language. The trial progressed upon issues framed by the foregoing allegations. Even if the complaint was insufficient (we do not so hold) Rule 15(b) F.R.Civ.P. forecloses any claim of error: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." In submitting the case, the District Judge told the jury that to find for the plaintiffs they would have to believe that the damage "was due to the negligence of the defendant, * * * in blasting at the dam site."

### 2) Insufficiency of evidence of liability.

■ Plaintiffs' residence was about 600 feet from the site of defendant's operations. If the testimony of Curtiss and Mable Duckett and their witnesses was believed, and apparently the jury did so, there was ample evidence of the undue severity and violence of the blasting. We best convey the content of plaintiffs' proofs anent the severity of the blasting by observing that, however credible, they substantially fulfilled the promise of the complaint's allegation that,

"Said blasting and dynamiting by defendant has ruined the said main dwelling house, ruined their cistern, caused the cellar to collapse, turned the house lop-sided, disconnected the wiring therein, short-circuited the house wiring thereby creating a serious hazard to life and property, removed plaster from the walls, disjointed the rafters and interior bracing, created cracks and holes therein, unbalanced the doors and windows."

Things must have been pretty bad in the neighborhood of the Ducketts.[1] There was evidence that the blasting threw rocks and debris onto the Duckett premises. Defendant emphasizes that there was no evidence that any such missiles actually hit the Duckett house—but the casting of them was some proof of the severity of the blasting. There was evidence by an expert that blasting which threw rock beyond the "work limit" of the project was negligent, and this expert set out the methods which due care required and which could be employed to avoid the kind of trespass that was inflicted on the plaintiffs. Defendant offered proofs that it carried on its blasting operations in keeping with proper practice and took all reasonable precautions to avoid damage to others.

 The foregoing, as well as other evidence introduced by the parties, made an issue of fact as to the charge of negligence and the issue was properly submitted for resolution by the jury.

In the past, Kentucky courts have required a showing of negligence before a defendant, conducting blasting operations, is liable for damages caused by vibrations or concussions; and this case, as we have indicated, was tried on that theory. It now appears that Kentucky has come close to adopting a rule of absolute liability for injuries to property from blasting. In Lynn Mining Co. v. Kelly, 394 S.W.2d 755, 758 (Ky.1965), the Kentucky Court of Appeals said:

> "The present Kentucky law is that a plaintiff, claiming to have been injured by the creation or maintenance of a nuisance, may be entitled to relief without allegation or proof of negligence on the part of the defendant. The Parks [Aldridge-Poage, Inc. v. Parks, 297 S.W.2d 632] and Jacobs [Marlowe Construction Co. v. Jacobs, 302 S.W.2d 612] cases * * * and those of similar import, are expressly overruled to the extent they adopted a contrary rule."

### 3) Insufficiency of proof of damages and excessive verdict.

Plaintiffs' house was upwards of fifty years old and the Ducketts had lived in it for about 38 years. There was evidence that the Ducketts had, over the years, done their own remodeling and repairs which, antecedent to defendant's blasting, left the house in "bad shape", and that except for some negligible harm from the blasting, the poor state of the house was not caused by the defendant's conduct. Certainly the trier of the facts might gain the impression that the Ducketts were extravagant in attributing all of their house's deterioration and poor condition to the blasting. From the Ducketts' brief, we set out the many hurts that were claimed to have been visited upon their home by defendant's wrongdoing:

> "Sheetrock on the wall was jarred out over the wood baseboard which buckled enough to put 'your fingers underneath it'; even the baseboard prized loose; walls cracked and buckled; plastered walls 'bursted'; the blasting caused interior displacement of woodwork as much as an inch; cracks in the house occurred enough to give visibility through the walls and corners from the inside to the outside at several places, including the kitchen and dining room and permit the rain to enter; 'big splits' in the concrete hearths suddenly appeared; the windows were broken, the putty shaken out and 'some of the windows can't raise at all'; in-

---

1. Only as a contribution to case history in the continuing study and research on "Blasting and its Consequences," we should record that Mable Duckett, in a pretrial deposition graphically described one blast as follows: "When these blasts would go off, it would jar the stove out of place, it would pick the stove up. I know I was sitting on the couch in the living room one time when it went off and *the couch went up* * * * * * * *forty feet in the air*." Under further examination, she moderated this measurement when she recalled that she and the couch did not go through the the roof. She did not repeat this at the trial.

966

terior and closet sliding doors locked or sagged, 'wouldn't open'; door frames warped.

"The floors were unleveled after blasting commenced, as much as 2 inches in the kitchen; and the floors vibrated when walked upon; ceilings cracked; deep freeze discommissioned; television picture tube jarred loose; pictures thrown from the walls; front porch posts turned sidewise by blasts; cellar walls cracked in an outbuilding; the 12 foot deep cistern constructed of concrete top base and cemented walls, located adjacent to back porch of the house, was completely ruined by the blasting operations of appellant.

"The house 'shakes,' vibrates all over; 'shifts'; 'is in a twist,' 'warped,' 'disjointed,' and 'torn apart.'"

Mrs. Duckett summarized the above description of what happened to her house with the succinct observation: "it is nothing but a mess."

Defendant points out the fact that the Ducketts continued living in their home through the whole time of their ordeal, about a year and a half, and were still living there at the time of trial in June, 1965, without having made any repairs to the house. This indeed could be accepted by a jury as supporting defendant's contention of gross exaggeration of the violence of the blasts and the damage to the Duckett house. Defendant argued that the dilapidated condition of the home was chiefly the consequence of Curtiss Duckett's long years of "do it yourself" repair and remodeling.

But the jury apparently went along with the Ducketts, applying some discount to their evidence of the cost of repairs. There was evidence that the house was worth about $14,000 before the blasting. Plaintiffs' witness Joe Thomas, a 72 year old retired carpenter, gave an estimate that it would cost $10,500— $6,000 for material and $4,500 for labor —to repair the damage done to the Duckett home by defendant; this figure was not broken down into specific items. The witness Thomas' testimony, its va-

lidity and weight, was subject to testing by cross-examination and contrary evidence. The jury applied what it considered a proper discount to such testimony by bringing in a verdict for $5,000.00, just less than half of Thomas' estimate.

The cost of repairs made necessary by defendant's conduct was a proper measure of damage. Business Realty, Inc. v. Noah's Dove Lodge No. 20, 375 S.W.2d 389, 391 (Ky.1963); River Queen Coal Co., Inc. v. Mencer, 379 S.W.2d 461, 464 (Ky.1964); Brooks-Calloway Co. v. Carroll, 235 Ky. 41, 45, 29 S.W.2d 592 (1930).

We have considered appellant's other claims of error. We find them without merit and they do not call for discussion.

Judgment affirmed.